**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Kinsale Insurance Company | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23–CV–04680 |
| | § | |
| Sanare Energy Partners LLC | § | |
|    Defendant. | § | |

## KINSALE INSURANCE COMPANY'S
## AMENDED RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIM

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Kinsale Insurance Company ("Kinsale") moves to dismiss the Counterclaim asserted by Defendant / Plaintiff-in-Counterclaim Sanare Energy Partners, LLC ("Sanare") (part of Doc. 49) because claims asserted by Sanare against Kinsale do not state a claim upon which relief can be granted.

### I.      Summary of Argument

Laci Blanchard sued Sanare alleging that Ronnie Blanchard died while working offshore on equipment associated with an offshore worksite owned and/or operated by Sanare. Kinsale filed suit against Sanare seeking a declaration that there is no coverage for Blanchard's claims under the Environmental Combined Liability Policy issued by Kinsale to SBS Energy Services, LLC ("SBS"). Sanare counterclaimed alleging coverage. Kinsale seeks the dismissal of Sanare's counterclaims under two exclusions, either of which alone would preclude coverage. First, the Marine Liability Exclusion—which applies when claims might have been covered under one or more of the marine liability policies listed in the exclusion if they had been purchased—clearly applies here. Second, the Watercraft

Exclusion applies because the L/B Swordfish, the boat on which Blanchard was living and working, constitutes a "watercraft" under the Policy.

## II.    Nature and Stage of the Proceeding

On April 8, 2022, Laci Blanchard filed a lawsuit against Sanare that was subsequently removed to federal court. (Doc. 49, Counterclaim, ¶ 17). The case *is Blanchard v. Sanare Energy Partners LLC*, No. 4:22-cv-2420 (S.D. Tex.) (the "Texas Lawsuit") (See Doc. 1-1, which is the First Amended Complaint). The Texas Lawsuit alleges that on March 25, 2022, Ronnie Blanchard was working offshore for SBS on the LB SWORDFISH. (Doc. 1-1, ¶¶ 9-10). The Texas Lawsuit alleges that Ronnie Blanchard was injured while working offshore on equipment associated with an offshore worksite owned and/or operated by Sanare and, as a result, died.[1] (Doc. 1-1, ¶ 1).

Kinsale filed a Complaint for Declaratory Relief against Sanare to seek a declaration by this Court that there is no coverage to Sanare under the Environmental Combined Liability Policy issued by Kinsale to SBS for the claims in the Texas Lawsuit. (Doc. 1). In response, Sanare filed an Answer, a Counterclaim against Kinsale seeking a declaratory judgment that there is coverage to Sanare under that policy, and a third-party complaint against SBS. (Doc. 7).

On October 17, 2023, Kinsale filed a Rule 12(b)(6) Motion to Dismiss Sanare's Counterclaim (Doc. 14) and a Rule 14(a)(4) Motion to Strike Sanare's Third-Party

---

[1] Laci Blanchard filed another lawsuit in state court in Louisiana, this time naming Kinsale and SBS as defendants. SBS removed that lawsuit to federal court on March 1, 2024. *Laci Blanchard v. SBS Energy Services, LLC et al.*, No. 2:24-cv-00534 (E.D. La.).

Complaint against SBS (Doc. 13). On December 12, 2023, this case was transferred *sua sponte* from the Eastern District of Louisiana to this Court (Doc. 30). Pursuant to this Court's Order for Conference and Disclosure of Interested Parties (Doc. 32), Kinsale filed an Amended Complaint on January 3, 2024 (Doc. 39). On January 25, 2024, Sanare filed its Answer to Kinsale's Amended Complaint, Counterclaim for Declaratory Judgment and Breach of Contract, and Third-Party Complaint against SBS in this Court (Doc. 49).

To return this case to the procedural state that it was in before the transfer, Kinsale is hereby, once again, filing a Rule 12(b)(6) Motion to Dismiss Sanare's Counterclaim. This motion is substantially similar to the motion that was fully briefed and awaiting decision before transfer except that Kinsale's original motion asserted three arguments. This motion asserts two arguments for dismissal. (In the event that this motion is denied, Kinsale reserves for a motion for summary judgment its arguments under the Employer's Liability Exclusion.)

### III.    Statement of Facts

Kinsale files this motion to dismiss to show that, as a matter of law, there is no coverage to Sanare under the Environmental Combined Liability Policy issued by Kinsale to SBS. Specifically, Kinsale issued to SBS Policy No. 0100158459-0 (the "Policy") (Doc. 1-3). The Policy was in effect from August 1, 2021, to August 1, 2022. (Doc. 1-3.) The arguments in this motion are based on two different exclusions in the Policy.

First, the Policy includes a "Marine Liability" exclusion. This exclusion states:

> This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising

3

injury", including but not limited to any contractual liability
that might be covered under any:

1. Hull, Protection & Indemnity Policy (P&I);

2. Marine Operator's Legal Liability Policy;

3. Charterer's Legal Liability Policy; or

4. Other similar marine insurance coverage on owned,
   operated, chartered or brokered watercraft.

This exclusion applies regardless of whether or not such
insurance is collectable, has been purchased, is in force or its
limits of insurance are available.

(Doc. 1-3, p. 72 of 91.) Thus, there is no coverage for liability that might have been covered

by a marine liability insurance policy—regardless of whether SBS actually purchased such

a policy.

Second, the Policy contains an "Absolute Auto, Aircraft and Watercraft" exclusion.

This exclusion states:

This insurance does not apply to:

\*      \*      \*

**g.  Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the
ownership, maintenance, use or entrustment to others of
any aircraft, "auto" or watercraft. Use includes
operation and "loading or unloading" and the handling
and placing of persons, by an insured, into, onto or from
an "auto".

This exclusion applies even if the claims against any
insured allege negligence or other wrongdoing in the
supervision, hiring, employment, training or monitoring
of others by that insured, if the "occurrence" which
caused the "bodily injury" or "property damage"
involved the ownership, maintenance, use or

4

> entrustment to others of any aircraft, "auto" or watercraft.

(Doc. 1-3, pp. 8, 56 of 91.) Thus, there is no coverage for any bodily injury arising out of the use of a watercraft.

## IV.    Statement of the Issues and Standard of Review

Whether Sanare fails to state a claim upon which relief can be granted in its Counterclaim seeking coverage for claims in the Texas Lawsuit when the Texas lawsuit involves claims of injury to an employee working offshore on a watercraft when two separate policy exclusions preclude such coverage.

An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. La. C.C. art. 1983. The policy is a contract and thus must be construed employing the general rules of interpretation of contracts. *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 638-39 (La. 2007); La. C.C. arts. 2045-2057. It is well settled that unless a statute or public policy dictates otherwise, the insurer may limit liability and impose reasonable conditions or limitations upon the insureds. *Supreme Servs.*, 958 So. 2d at 638-39. As such, an unambiguous provision limiting liability must be given effect. *Id.* at 639. Moreover, "freedom to contract" is an "important public policy in Louisiana," and therefore courts will enforce the provisions in an insurance policy issued to a commercial entity. *Creekstone Juban I, LLC v. XL Ins. Am., Inc.*, 282 So. 3d 1042, 1050 (La. 2019).

On a motion to dismiss, all well-pleaded facts are accepted as true. *Guidry v. Am. Pub. Life Ins. Co*., 512 F.3d 177, 180 (5th Cir. 2007). "[O]nly a complaint that states a

plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). A federal court sitting in diversity applies state substantive law. *Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017) (*citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). An appellate court conducts a *de novo* review of a district court's dismissal of a complaint under Rule 12(b)(6). *Clyce v. Butler*, 876 F.3d 145, 148 (5th Cir. 2017)

**V.     Argument**

The Policy provides coverage for certain types of damages and excludes coverage for other types of damages. It does not provide coverage for damages when an employee of SBS is injured or dies while working offshore. The Policy makes that clear in two different exclusions, either of which is a basis for ruling that there is no coverage here.

**A.     Marine Liability Exclusion.**

The first reason that there is no coverage here is the Marine Liability Exclusion. As noted above, the Marine Liability Exclusion provides that there is no coverage for any bodily injury "that might be covered under any" of four categories of marine liability insurance policies:

1. Hull, Protection & Indemnity Policy (P&I);

2. Marine Operator's Legal Liability Policy;

3. Charterer's Legal Liability Policy; or

4. Other similar marine insurance coverage on owned, operated, chartered or brokered watercraft.

(Doc. 1-3, p. 72 of 91). This exclusion also states: "This exclusion applies regardless of whether or not such insurance is collectable, has been purchased, is in force or its limits of insurance are available." *Id.*

The four categories of marine liability policies listed in the exclusion are all policies of marine insurance that are designed to respond to personal injury or death claims by personnel working offshore. *See* Robert T. Lemmon, II, *Allocation of Marine Risks: An Overview of the Marine Insurance Package,* 81 Tul. L. Rev. 1467 (June 2007) (cited as "Lemmon"). The first policy identified in the exclusion is a Hull, Protection & Indemnity Policy (P&I). A P&I Policy generally provides coverage for liability of a vessel owner in its capacity as a vessel owner when personal injury and death are caused by its vessel. *Id.; see also* La. R.S. § 22:47(13)(e) (defining "Marine protection and indemnity insurance" as providing "coverage for any legal liability assumed by an insured for loss, damage, or expense incident to ownership, operation, chartering, maintenance, use, repair, or construction of any vessel, craft, or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness, or death or for the loss of or damage to the property of another person . . . .)." The second and third policies identified in the exclusion are a Marine Operator's Legal Liability Policy and a Charterer's Legal Liability Policy. These two policies provide similar coverage to that of P&I but for circumstances where—as here—the operator of the vessel against which liability is alleged is not also the owner of the vessel. Lemmon, *supra*, at 1488; *Randall v. Chevron U.S.A.*, Inc., 788 F. Supp. 1398, 1404-05 (E.D. La. 1992). And the fourth item listed in the exclusion is a catch-all for other types of marine liability insurance that could have been

purchased: "Other similar marine insurance coverage on owned, operated, chartered or brokered watercraft." (Doc. 1-3, p. 72 of 91). The point is that the Kinsale policy is not a marine liability policy. If that coverage was desired, it had to be purchased separately.

The exclusion states that it applies whenever the liability might have been covered under any of these types of marine liability policy. There is no requirement that the policy be purchased by SBS. For example, if SBS was doing work for a marine charterer, SBS might insist that it be added as an additional insured to a Charterer's Legal Liability Policy that was purchased by a charterer. And there is also no requirement that the marine liability coverage be purchased by anyone. In other words, an insured cannot expand coverage under Kinsale's Policy by declining to purchase marine liability coverage from another insurer. By using this broad language, the exclusion makes it clear that in any circumstance in which a liability might have been covered by a marine liability policy of any type, that is not the type of coverage that Kinsale provided under this policy.

The clear language of this exclusion plainly applies here. The claims arise out of Blanchard's death while working offshore. As such, the claims not only "might be covered," which is all that is required for coverage to be excluded under the Kinsale Policy, but almost certainly would have been covered under one or more of the marine liability policies listed in this exclusion. These are policies designed to respond to marine personal injury and death liabilities. Clearly, Blanchard's injury is the type of claim that "might" be covered under one of these types of marine liability policies that someone could have purchased.

Courts routinely exclude coverage for injuries related to marine liability when a policy contains a marine liability exclusion. For example, in *Farrell Lines, Inc. v. Ins. Co. of N. Am.*, 789 F.2d 300 (5th Cir. 1986), a longshoreman was injured when he was in a tractor-trailer and attempting to load a shipping container onto a vessel. An insurance company issued a Comprehensive Liability Policy that contained a marine liability exclusion "which stated that the policy did not cover 'any occurrence or accident which is or would be covered in whole or in part under Protection and Indemnity policy of Marine Insurance . . . .'" *Id.* at 304. The district court held that there was no coverage in light of the exclusion, and the Fifth Circuit affirmed, stating that "it cannot be accepted that the risk arising from longshoreman Glasper's injury would lie outside the coverage afforded by P & I policy." *Id.*

Citing and following *Farrell Lines*, a district court in *In re Athena Const., L.L.C.*, No. CIV.A. 06-2004, 2008 WL 3153038 (W.D. La. Aug. 4, 2008), found that there was no coverage in light of a marine liability exclusion that excluded coverage for any injury that might be recoverable under the same three types of policies that are identified in the exclusion at issue in this case.[2] In that case, there was an explosion resulting in injuries

---

[2] Specifically, the exclusion stated: "This does not apply to any claim, injury, loss or damage that may be recoverable under any Hull, Protection & Indemnity (P & I) policy including claims for contractual liability; Marine Operators Legal Liability; Charterers Legal Liability, or, any similar marine insurance coverages on owned, operated, chartered, or brokered watercraft regardless of whether such insurance has been purchased, is in force or the limits of liability are available." *In re Athena Const., L.L.C.*, No. CIV.A. 06-2004, 2008 WL 3153038, at *2 (W.D. La. Aug. 4, 2008).

when a vessel collided with a pipeline. The court cited *Farrell* and found the exclusion applicable. *Id.* at *4.

Similarly, in *In re Antill Pipeline Const. Co., Inc.*, No. CIV.A. 09-3646, 2013 WL 64609 (E.D. La. Jan. 4, 2013), there was a vessel allision resulting in the death of five people on board, and the question was whether an excess commercial liability policy issued by Chartis provided coverage. The Chartis policy had marine liability exclusion that stated: "This insurance does not apply to any marine liability which includes, but is not limited to, the following:" followed by a listing of numerous policy types including "Charterer's Liability," "Protection and Indemnity Liability," and "Ship Builders Liability."[3] The Court held that the marine liability exclusion clearly excluded any coverage under the Chartis policy for the injury, stating that "the Court finds as a matter of law that any resulting liability is necessarily a 'marine' one under either maritime or Louisiana law, regardless of how Antill's direct claims against Tarpon are presented." *Id.* at *1.

Because one of the different types of marine liability policies might have provided coverage for the claims arising out of the bodily injury and death of Blanchard had marine liability insurance been purchased by SBS—and regardless of whether or not it actually was purchased by SBS—there is no coverage under the Policy issued by Kinsale for this type of claim.

---

[3] *In re Antill Pipeline Const. Co., Inc.*, No. CIV.A. 09-3646, 2012 WL 5423709, at *2 (E.D. La. Nov. 6, 2012)

**B.      Watercraft exclusion.**

A second and independent reason that there is no coverage is that there is a watercraft exclusion in the Policy. This exclusion applies to any bodily injury "arising out of the … use . . . of any . . . watercraft." (Doc. 1-3, pp. 8, 56 of 91).

"A watercraft is commonly understood to be a boat, a vessel, or some other apparatus that goes about on the water." *Viator v. Dauterive Contractors, Inc.*, 831 So. 2d 407, 408 (La. App. 5 Cir. 2002).[4] Blanchard was living and working on the L/B SWORDFISH, which is a type of boat. As the Counterclaim admits, it is a "liftboat that is capable of being temporarily affixed to the surface via 'legs' that extend downward through the water and into the seabed." (Doc. 49, Counterclaim, ¶ 10). Thus, it is a "watercraft."

Blanchard was injured while working offshore, and his injury clearly arouse out of the use of the L/B SWORDFISH. The Counterclaim alleges that the watercraft was serving "as a workspace for operations" being conducted by Blanchard and even alleges that "[i]t was expressly contemplated by both Sanare and SBS at the time of contracting that vessels, including the L/B SWORDFISH, would play a substantial role" in the work that Blanchard was doing. (Doc. 49, Counterclaim, ¶ 17). Sanare also alleges that "the services SBS was providing to Sanare at the time of the incident could not have been performed without the use of a liftboat like the L/B SWORDFISH." (Doc. 49, Third-Party Demand, ¶ 14). Thus,

---

[4] Similarly, the dictionary definition of "watercraft" is a "ship, boat" or "craft for water transport." *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/watercraft (last checked March 4, 2024).

11

there was a bodily injury arising out of the use of a watercraft. The watercraft exclusion excludes this type of coverage.

The Louisiana Supreme Court has confirmed that a watercraft exclusion is applicable in these circumstances. *Henry v. S. Louisiana Sugars Co-op., Inc.*, 957 So. 2d 1275 (La. 2007). In *Henry*, the Supreme Court found a watercraft exclusion applicable when a worker was injured as he slipped on a gangplank between a moored barge that was used as a dock and a cargo barge. Like here, the exclusion in that policy applied when there was a bodily injury "arising out of the . . . use . . . of any . . . watercraft . . . ." *Id.* at 1278. The Supreme Court held: "The watercraft exclusion in the Audubon CGL policy unambiguously denies coverage for the alleged injuries sustained by the Henry plaintiffs in the main demand." *Id.* at 1280.

The federal Fifth Circuit has also applied the watercraft exclusion in circumstances like these. In *Holden v. U.S. United Ocean Servs., L.L.C.*, 582 F. App'x 271 (5th Cir. 2014), an employee of the named insured was injured while preparing to remove a gangway that led from a dock to a barge owned by the alleged additional insured. *Id.* at 272. The insurer for the named insured argued that no coverage was provided for the alleged additional insured because of a watercraft exclusion. The trial court agreed that there was no coverage, and the Fifth Circuit affirmed. In that case, the watercraft exclusion said that it applied when there was a bodily injury "arising out of the ownership or operation of any watercraft . . . ." *Id.* at 274.

Similarly, in *Johnson v. Seacor Marine Corp.*, 404 F.3d 871 (5th Cir. 2005), three individuals employed by the named insured on an insurance policy were injured while

transferring between offshore platforms and a watercraft. *Id.* at 874. The insurance policy issued to the named insured had a watercraft exclusion that excluded coverage for a bodily injury "arising out of the . . . use . . . of any aircraft, 'auto' or watercraft . . ." *Id.* at 874 n.1. The Fifth Circuit held that even if SEACOR, the entity sued by the employees, had additional insured status under the insurance policy issued to the named insured (the employer of the injured plaintiffs), there was still no coverage because of the watercraft exclusion. "The watercraft exclusion plainly excludes coverage to SEACOR." *Id.* at 877.

Here, the watercraft exclusion plainly excludes coverage to Sanare. Thus, this is a third, independent basis to grant this motion.

## VI.      Conclusion

In the *In re Athena Construction* case cited above, the federal district court held that there was no coverage under an insurance policy because multiple exclusions applied including (1) a marine insurance exclusion and (2) a watercraft exclusion. The same is true here. Pursuant to either exclusion, as a matter of law, the Policy provides no coverage for damages arising out of the bodily jury to Mr. Blanchard. Accordingly, Kinsale requests dismissal of Sanare's Counterclaim for insurance coverage because it fails to state a claim upon which relief can be granted.

Respectfully submitted,

By:    */s/ Matthew C. Guy*
       **Matthew C. Guy** (Attorney-in-Charge)
       State Bar No. 24050702
       Fed. Bar No. 622802
       **Collin M. Weyand** (Of Counsel)
       State Bar No. 24106763
       Fed. Bar No. 3251459
       **Jeffrey E. Richardson** (Of Counsel)
       La. Bar No. 23273
       ADAMS AND REESE LLP
       1221 McKinney, Suite 4400
       Houston, Texas 77010
       Phone: (713) 652-5151
       Fax: (713) 652-5152
       Email:  Matthew.Guy@arlaw.com
       Email: Collin.Weyand@arlaw.com
       Email: Jeff.Richardson@arlaw.com

**Attorneys for Kinsale Insurance Company**

14

## CERTIFICATE OF SERVICE

The undersigned Counsel hereby certifies that the foregoing has been served via ECF and/or email on this 8th day of March, 2024, to the following:

> Robert R. Johnston, T.A.
> Robert.Johnston@pjgglaw.com
> Constance C. Waguespack
> Constance.Waguespack@pjgglaw.com
> Courtney E. Crowell
> Courtney.Crowell@pjgglaw.com
> Wade B. Hammett
> Wade.Hammett@pjgglaw.com
> PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC
> 1100 Poydras Street, Suite 2250
> New Orleans, LA 70163
>
> M. Matt Jett
> mjett@hallmaineslugrin.com
> Caroline E. Bossier
> cbossier@hallmaineslugrin.com
> Aaron E. Koenck
> akoenck@hallmaineslugrin.com
> HALL MAINES LUGRIN, P.C.
> 2800 Post Oak Boulevard
> Houston, TX 77056-6125

_/s/ Matthew C. Guy_
Matthew C. Guy

## Certificate of Conference

I certify that, on March 4, 2024, I conferred with counsel for Sanare via email concerning the relief to be requested by Kinsale. We were unable to reach agreement on the relief to be requested.

_/s/ Collin M. Weyand_
Collin M. Weyand

15