UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **KINSALE INSURANCE COMPANY** | **CIVIL ACTION NO: 4:23-cv-04680** |
| **VERSUS** | **DISTRICT JUDGE:** <br> **HON. GEORGE C. HANKS, JR.** |
| **SANARE ENERGY PARTNERS, LLC** | **MAGISTRATE JUDGE:** <br> **HON. ANDREW M. EDISON** |

**SANARE ENERGY PARTNERS, LLC'S OPPOSITION TO KINSALE INSURANCE COMPANY'S MOTION TO STRIKE SANARE'S THIRD-PARTY COMPLAINT**

**MAY IT PLEASE THE COURT:**

Sanare Energy Partners, LLC ("Sanare") respectfully submits this Opposition to Kinsale Insurance Company's ("Kinsale") Motion to Strike Sanare's Third Party Complaint (Rec. Doc. 55). Kinsale attempts to frame this litigation as a "straightforward coverage dispute" that involves issues that are distinct from those asserted by Sanare against Kinsale's insured, SBS Energy Services, LLC ("SBS"). The reality of this case, however, is that the claims asserted by Kinsale and Sanare in the main demand are one in the same as those Sanare asserts against Kinsale's insured, SBS.

Additionally, the law governing impleader in declaratory judgment actions, especially those initiated by insurers, is not as clear as Kinsale suggests. The Fifth Circuit has allowed third-party complaints to proceed in declaratory judgment actions when the issues underlying the declaratory judgment claim and the third-party claim "turned on substantially the same facts" and are "so closely intertwined that consistent results probably depended upon their being decided at one time." *See Am. Fidelity & Cas. Co. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956). The issues in both Kinsale's declaratory judgment action and Sanare's Third-Party Demand against SBS hinge on whether the Master Service Agreement ("MSA") between Sanare and SBS is

governed by Louisiana state law and, thus, subject the Louisiana Oilfield Indemnity Act ("LOIA"), or is instead governed by maritime law, under which its defense and indemnity provisions are enforceable. The answer to this question determines whether SBS is obligated to defend and indemnify Sanare from and against the claims of Laci Blanchard, whether Sanare is an additional insured under the Kinsale Policy, whether coverage is owed under the Kinsale Policy, and whether SBS breached the insurance provisions of the MSA such that it is obligated to directly insure Sanare from Mrs. Blanchard's claims. Thus, these claims not only arise out of the same set of facts, but the determination of one is so intertwined in the other that separately litigating each action could result in inconsistent rulings.

Finally, the addition of SBS to this litigation will not unnecessarily complicate this action but will instead eliminate the need for duplicative suits, each with overlapping, if not, identical, discovery. For these reasons, and those set forth below, Sanare's Third-Party Demand against SBS is procedurally proper and Kinsale's Motion to Strike should be denied.

## FACTUAL BACKGROUND

This matter arises out of the wrongful death and survivorship action filed on behalf of Laci Blanchard and her minor child, W. B., in which Mrs. Blanchard seeks damages for the death of her husband, Ronnie Blachard. Mr. Blanchard was an employee of SBS who drowned on March 25, 2022 when the hydraulic workover unit ("HWOU") on which he was working fell into the Gulf of Mexico.

At the time of the incident, Sanare was conducting operations on its well #19, a single caisson well that is located in Main Pass Field 64 in the Gulf of Mexico and permanently affixed to the Outer Continental Shelf ("OCS"). These operations included the removal and replacement of well tubing. To do this, Sanare retained SBS, a company that specializes in well intervention and completion services, to engineer and install a HWOU on its #19 well. Additionally, Sanare

chartered the L/B SWORDFISH, a lift boat owned and operated by All Coast, LLC ("All Coast"). The vessel was critical to the installation of the HWOU, as it provided both a work platform for the assembly of the HWOU and a crane that was used to lift the HWOU onto the well and hold it in place while it was secured to the wellhead. Additionally, the vessel provided living quarters for those working on the project, including the SBS crew.

At all times relevant to this litigation, SBS's work for Sanare was performed pursuant to the terms of the parties' March 16, 2022 MSA.[1] The MSA obligated SBS to hold harmless and indemnify Sanare and all members of Sanare's Company Group from and against all claims arising out of the injury or death of any SBS employee, including Mr. Blanchard.[2] The MSA obligated SBS to hold harmless and indemnify Sanare and all members of Sanare's Company Group from and against all claims arising out of the injury or death of any SBS employee, including Mr. Blanchard.2 The MSA further obligated SBS to obtain additional insured coverage for Sanare and the Sanare "Company Group" and to invoice Sanare for the cost of its additional insured coverage, commonly referred to as a *Marcel* premium.[3] *See Marcel v. Placid Oil Co.*, 11 F.3d 563, 569 (5th Cir. 1994). SBS procured the subject insurance policy from Kinsale but failed to issue an invoice to Sanare for the *Marcel* premium, as discussed further below. The MSA also provides that, in the event SBS failed to comply with its insurance obligations, it was obligated to become the direct insurer of Sanare for all contractually assumed liabilities.[4]

Sanare tendered Mrs. Blanchard's claims against it and its contractor, All Coast, to SBS pursuant to the terms of the MSA.[5] To date, SBS has not responded to Sanare's tender. Instead, Kinsale has denied Sanare's demand for additional insured coverage under the subject policy.

---

[1] *See* Sanare/SBS MSA, attached hereto as Exhibit "A."
[2] *Id*. at Section 4.4.
[3] *Id*. at Section 3.6.
[4] *Id*. at Section 3.1.
[5] *See* July 6, 20222 correspondence, attached as Exhibit "F" to Sanare's Answer, Counterclaim, and Third-Party Demand. (Rec. Doc. 49).

3

Kinsale has taken the position that coverage is excluded under various policy exclusions. Its position is premised upon the legally incorrect notion that the MSA is subject to Louisiana state law and therefore, its defense and indemnity obligations are void under the LOIA.

On September 5, 2023, Sanare filed its Answer to Kinsale's Complaint for Declaratory Judgment.[6] Sanare's Answer contained a Counterclaim against Kinsale as well as a Third-Party Demand against SBS. Sanare's allegations against SBS arise out of SBS's breach of the MSA, specifically, its failure to comply with its contractual obligations to defend, indemnify, and insure Sanare from and against the claims of Mrs. Blanchard. As discussed further below, Sanare's claims against SBS are directly related to its claims against Kinsale, and Kinsale's obligation to provide additional insured coverage to Sanare derives directly from SBS's obligation to defend and indemnify Sanare. As such, Rule 14 permits the impleader of SBS into this litigation.

On December 12, 2023, this case was transferred *sua sponte* from the Eastern District of Louisiana to this Court.[7] As ordered by the Court, Kinsale filed an Amended Complaint on January 25, 2024.[8] Sanare filed its Answer to Kinsale's Amended Complaint, Counterclaim for Declaratory Judgment and Breach of Contract, and Third-party Complaint against SBS.[9] Sanare's allegations against SBS arise out of SBS's breach of the MSA, specifically, its failure to comply with its contractual obligations to defend, indemnify, and insure Sanare from and against the claims of Mrs. Blanchard. As discussed further below, Sanare's claims against SBS are directly related to its claims against Kinsale, and Kinsale's obligation to provide additional insured coverage to Sanare derives directly from SBS's obligation to defend and indemnify Sanare. As such, Rule 14 permits the impleader of SBS into this litigation.

---

[6] Rec. Doc. 49.
[7] Rec. Doc. 30.
[8] Rec. Doc. 39.
[9] Rec. Doc. 49.

4

On March 8, 2024, Kinsale filed its amended Rule 14(a)(4) Motion to Strike Sanare's Third-Party Complaint.[10]

## LAW AND ARGUMENT

### I. Rule 14 and its Application in Declaratory Judgment Actions

Federal Rule of Civil Procedure 14 provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). Rule 14 "exists to bring in third parties who are derivatively liable to the impleading party." *Hassan v. La. Dep't of Transp. & Dev.*, 190 F.3d 538, 1999 WL 642861, at *2 (5th Cir. 1999). It aims to promote efficiency and reduce litigation "by having one lawsuit do the work of two." *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 316 F.R.D. 179, 183 (E.D. La. 2016).

In determining whether to allow a third-party complaint, courts consider several factors which include avoiding circuitous actions, promoting judicial efficiency, obtaining consistent results, avoiding possible prejudice against other parties, the unreasonableness of the delay, and the lack of substance of the third-party complaint. *Aaron v. Illinois Nat'l Ins. Co.,* No. CV 22-09, 2022 WL 2315802, at *3 (E.D. La. June 27, 2022) (citing *Am. Fid. & Cas. Co. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956); *McDonald*, 734 F.2d at 184). A district court has wide discretion in determining whether to allow the filing. *Id*. (citing *McDonald v. Union Carbide Corp.*, 734 F.2d 182, 184 (5th Cir. 1984)). Federal courts take differing approaches on how Rule 14 applies in declaratory judgment actions, in which the third party cannot be "'liable over to the defendant for all or part of the plaintiff's recovery,' because the plaintiff does not seek to recover money damages." *Kinsale Ins. Co. v. CD Mgmt. of New Orleans, Inc.*, No. CV 23-736, 2023 WL 3949121, at *8 (E.D. La. June 12, 2023).

---

[10] Rec. Doc. 55

Particularly, in the context of declaratory judgment actions filed by insurers, some courts have held that a third-party claim is not "contingent" on the outcome of the main claim "simply because the third-party plaintiff would only seek recovery from the third-party defendant if the underlying plaintiff prevails on its declaratory judgment action." *Id*. (internal citations omitted). However, other courts have taken a "more flexible approach," permitting impleader in a declaratory judgment action when "the facts of the underlying case are closely intertwined with the facts of the third-party claims." *Id.* (internal citations omitted). While the Fifth Circuit has not clearly endorsed either approach, it has allowed a third-party complaint in a declaratory judgment action when the issues underlying both sets of claims "turned on substantially the same facts," and "were so closely intertwined that consistent results probably depended upon their being decided at one time." *Id*. citing *Am. Fidelity & Cas. Co. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956).

## II. Sanare's Third-Party Demand against SBS is Procedurally Proper under Rule 14

Kinsale's position that Sanare's claims against SBS "have nothing to do with" the coverage dispute is simply incorrect. Kinsale's decision to use a declaratory judgment action as the procedural mechanism to initiate this litigation does not change the fact that SBS and Kinsale's potential liability to Sanare are one in the same. The sole legal issue in both cases is whether the MSA qualifies as a maritime contract such that its defense and indemnity obligations are enforceable. If so, the MSA qualifies as an "insured contract" under the Kinsale policy.

Conversely, the outcome of Kinsale's coverage claims directly bears upon SBS's liability for breach of contract and obligation to step into the place of Kinsale and directly insure Sanare for the claims asserted by Mrs. Blanchard. The question of whether SBS failed to procure the proper type of insurance required under the MSA and/or is obligated to directly insure Sanare for Mrs. Blanchard's claims depends entirely on the outcome of the coverage dispute. Thus, Sanare's

claims against SBS for defense, indemnity, and insurance are derivative of, and contingent upon, its claims against Kinsale for additional insured coverage.

The cases Kinsale cites in its Motion to Strike involve facts that are completely different than those of this case and therefore, do not apply. For example, Kinsale cites *Hanover Ins. Co. v. Superior Lab Servs., Inc.* for the proposition that a third-party demand is improper in a declaratory judgment action regarding coverage under an insurance policy. 316 F.R.D. 179, 185 (E.D. La. 2016). (Rec. Doc. 55 at p. 8). The *Hanover* case does not, however, stand for such a broad proposition and, despite Kinsale's representations to the contrary, involves a completely different set of facts. Specifically, the dismissal of the third-party complaint in *Hanover* was premised upon the fact that the claims at issue required independent reviews of two different insurance policies covering two different time periods. *Hanover Ins. Co.*, 316 F.R.D. at 185 (E.D. La. 2016). The Court noted that the evidence required to prove each set of claims was distinct and the analysis of one claim did not affect the analysis of the other. *Id*.[11]

Additionally, in *Kinsale v. CD Management of New Orleans*, an office building owned by defendants, Seabrook Harbor and Marine, Sea Brook Marine, LLC, and Seabrook Harbor, LLC's (collectively, "Seabrook"), was destroyed by a fire. No. CV 23-736, 2023 WL 3949121, at *1 (E.D. La. June 12, 2023). Kinsale, Seabrook's insurer, denied coverage for the damage on the basis that Seabrook falsely represented that the building had an automatic fire alarm. *Id*. Kinsale filed a

---

[11] The *Hanover* case is a consolidated action arising out of two personal injury actions filed in Louisiana state court against Allied Shipyard, Inc. ("Allied"). Its procedural and factual background is complex and involves multiple actions for declaratory judgments filed by different insurers seeking to deny coverage for liabilities assumed by the contractors under their respective Master Service Agreements. In sum, Allied filed third-party demands against its contractors who performed the sandblasting job at issue, including Masse Contracting, Inc. ("Masse") and Superior Labor Services, Inc. ("Superior"). The Court found that Masse's third-party claim against its insurer, The Gray Insurance ("The Gray") in the Masse Litigation (Masse's declaratory judgment against its insurers) was not derivative of, or dependent on, Arch Insurance Company's ("Arch") claims against Masse in the Arch Litigation (Arch's declaratory judgment against Superior and Allied) because Arch's policy and Gray's policies were independent and distinct policies. Specifically, the Court held that Arch's claims against Masse in the Arch Litigation was based on the policy of insurance that Arch issued to Massee while Masse's claim against Gray Insurance in the Masse Litigation was based on the policy Gray Insurance issued to Masse. *Hanover Ins. Co. v. Superior Lab. Servs., In*c., 316 F.R.D. 179, 185 (E.D. La. 2016).

7

complaint for declaratory judgment seeking a ruling that it had no obligation to cover the loss because Seabrook failed to satisfy a condition precedent of the policy. *Id*. Seabrook then filed a third-party complaint against Central Monitoring, Inc. ("Central Monitoring"). *Id*. Seabrook alleged that Central Monitoring, the company it had retained to replace its alarm system, misrepresented that its newly installed system included an automatic fire alarm. *Id*. at *2.

The Court struck Seabrooks' third-party demand against Central Monitoring because it was clear that Seabrook's claim was not derivative of, or contingent upon, the primary claim. *Id*. at *9. The Court noted that the underlying facts of both actions were distinct and consistent results did not depend on the two claims being decided simultaneously. *Id*. ("To the contrary, the question of whether Seabrook's insurance claim is covered under the plain terms of the policy is wholly distinct from the question of whether [Central Monitoring] acted negligently or breached their contract with Seabrook for failing to install a centrally monitored, automatic alarm.").

Here, the facts of Sanare's claims against SBS turn on the exact same facts as its counterclaim against Kinsale. SBS and/or Kinsale can be held directly liable, in whole or in part, for Sanare's claims against either party depending on whether the MSA is found to be a maritime contract. Thus, SBS's and Kinsale's liability to Sanare are so closely intertwined that consistent results of both actions depend on them being decided at one time.

### III. Impleader of SBS into this Litigation Supports the Aims of Rule 14

Allowing the impleader of SBS into this litigation supports the aims of Rule 14 as doing so will avoid duplicative suits on identical issues. The overlap between the factual and legal issues in each action is clear—the evidence required to establish that the MSA is a maritime contract under which SBS is obligated to defend, indemnify, and insure Sanare is the exact same evidence that will establish the MSA as an "insured contract" under the Kinsale policy. Thus, the discovery conducted in one matter will be the exact same as the discovery conducted in the other. Permitting

such duplicative claims to advance, despite their connection with the declaratory judgment action, would undermine judicial efficiency. Moreover, requiring Sanare to litigate its claims against SBS in a separate action could lead to inconsistent results in which the MSA is found to be a maritime contract in one proceeding but subject to state law in the other.

## CONCLUSION

SBS is liable to Sanare for all or part of Sanare's claim against Kinsale. The liability of both SBS and Kinsale is dependent on the outcome of both actions and ultimately hinges on the legal issue of whether the MSA is governed by maritime law. The fact that Kinsale initiated this litigation by a declaratory judgment action does not change that reality. As such, Sanare's Third-Party demand against SBS in this action is proper and Kinsale's Amended Motion to Strike should be denied.

Respectfully submitted,

*/s/ Robert R. Johnston*
Robert R. Johnston, T.A. (#22442)
Constance C. Waguespack (#36416)
Courtney E. Crowell (#38708) *To be Admitted Pro Hac Vice*
Andrew J. Wondolowski (#40998)
Wade B. Hammett (#31186)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Robert.Johnston@pjgglaw.com
Constance.Waguespack@pjgglaw.com
Courtney.Crowell@pjgglaw.com
Andrew.Wondolowski@pjgglaw.com
Wade.Hammett@pjgglaw.com
**COUNSEL FOR SANARE ENERGY PARTNERS, LLC**
*Admitted Pro Hac Vice*

**AND**

M. Matt Jett
Texas Bar No. 24068684
S.D. Tex No. 1091711
mjett@hallmaineslugrin.com
**HALL MAINES LUGRIN, P.C.**
Williams Tower, Suite 6400
2800 Post Oak Boulevard
Houston, TX  77056-6125
Tel:  713-871-9000
Fax:  713-871-8962
*To be Admitted Pro Hac Vice*

### CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of March, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all known counsel by operation of the court's electronic filing system.  I further certify that I shall mail the foregoing document and the notice of electronic filing by first-class mail to all non CM/ECF participants.

    */s/*    **Robert R. Johnston**