UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **KINSALE INSURANCE COMPANY** | **CIVIL ACTION NO: 4:23-cv-04680** |
| **VERSUS** | **DISTRICT JUDGE:** <br> **HON. GEORGE C. HANKS, JR.** |
| **SANARE ENERGY PARTNERS, LLC** | **MAGISTRATE JUDGE:** <br> **HON. ANDREW M. EDISON** |

### SANARE ENERGY PARTNERS, LLC'S OPPOSITION TO KINSALE INSURANCE COMPANY'S RULE 12(B) MOTION TO DISMISS COUNTERCLAIM

**MAY IT PLEASE THE COURT:**

Sanare Energy Partners, LLC ("Sanare") respectfully submits this Opposition to the Rule 12(b) Motion to Dismiss Counterclaim filed by Kinsale Insurance Company, Inc. ("Kinsale") (Rec. Doc. 56). Sanare's Counterclaim against Kinsale sets forth clear allegations relating to the Master Service Agreement ("MSA") between Sanare and Kinsale's insured, SBS Energy Services ("SBS"), and clearly articulates its position that the MSA is a maritime contract to which the Louisiana Oilfield Indemnity Act ("LOIA") does not apply. As such, the MSA is an "insured contract" under Kinsale's Environmental Combined Liability Policy, No. 0100158459-0 (hereinafter "the policy" or "the Kinsale policy")[1], and Kinsale is obligated to provide a defense and insurance coverage to Sanare.

Kinsale makes no attempt to analyze whether the MSA is governed by maritime law, nor does it articulate how, accepting the allegations set forth in Sanare's Counterclaim as true, Sanare has failed to state a plausible claim for relief. Instead, Kinsale relies on its conclusory and unsupported arguments regarding policy exclusions that are inapplicable to this claim.

Numerous issues of fact exist as to whether Sanare is entitled to additional insured coverage

---

[1] See Rec. Doc. 1-3, Policy No. 0100158459-0.

under the Kinsale policy. If it is established that the MSA is governed by maritime law, the claims against Sanare are covered under the policy as those claims arise out of liabilities assumed by SBS under an insured contract. Because there exists a set of facts which, if proven during the course of discovery, would entitle Sanare to the relief it seeks, dismissal of its Counterclaim under Rule 12(b)(6) is improper. As such, Kinsale's motion must be denied.

## FACTUAL BACKGROUND

Ronnie Blanchard was an employee of SBS who died on March 25, 2022 while installing a hydraulic workover unit ("HWOU")[2] on Sanare's Well #19, a single caisson well located in Main Pass Field 64 of the Gulf of Mexico and permanently affixed to the Outer Continental Shelf ("OCS"). Sanare retained SBS to design and install the HWOU on Well #19 for the purpose of removing and replacing tubing within the well. To transport, assemble, and install the HWOU, SBS required the use of a vessel, and Sanare and SBS at all relevant times expected and understood that a vessel would play a substantial role in the performance of SBS' services. Sanare chartered the L/B SWORDFISH, a lift boat owned and operated by All Coast, LLC ("All Coast"). The vessel played a substantial role in the project and was critical to SBS's performance of its services under the MSA. Specifically, the lift boat was used as a work platform for the assembly of the HWOU and as housing for those working on project, including the SBS crew. Additionally, the crane on the vessel was used to transport the assembled portions of the HWOU from the vessel deck to the top of the well for installation on the wellhead.

The work SBS was performing for Sanare was completed pursuant to the terms of the parties' March 16, 2022 MSA.[3] The MSA contained a typical "knock-for-knock" indemnity clause under which SBS was obligated to defend, indemnify, and hold Sanare and Sanare's

---

[2] A hydraulic workover unit is a large but portable piece of equipment that generates push and pull forces. It is used for a variety of well maintenance operations, including running work strings and completing tubing operations.
[3] *See* Sanare/SBS MSA, (Exhibit "C" to Sanare's Answer, Counterclaim and Third-Party Complaint, Rec. Doc. 49).

contractors harmless from all claims arising out of the injury or death of any SBS employee.[4] The MSA further obligated SBS to fully insure all indemnity obligations assumed under the contract and to name Sanare as an additional insured on its insurance policies, with a waiver of subrogation in Sanare's favor.[5] SBS procured the Kinsale policy for the purposes of complying with its insurance obligations under the MSA.[6]

On April 8, 2022, Laci Blanchard, Mr. Blanchard's widow, filed suit against Sanare in Harris County, Texas state court.[7] The case was removed to the United States District Court for the Southern District of Texas.[8] Mrs. Blanchard then filed an amended complaint naming All Coast and SBS as additional defendants.[9] She subsequently dismissed her claims against SBS and filed a Motion to Intervene in this litigation to pursue her claims against SBS.[10]

Upon being sued in Texas state court, Sanare tendered Mrs. Blanchard's claims to SBS pursuant to the terms of the MSA.[11] Kinsale, SBS's insurer, responded by denying Sanare's tender.[12] Kinsale then filed a Complaint for Declaratory Relief seeking a ruling that no coverage for the claims against Sanare is afforded under the subject policy. Kinsale's Complaint for Declaratory Relief cites several policy exclusions, two of which are relevant to the Kinsale's

---

[4] *Id*. at Section 4. As set forth in its Counterclaim, Sanare has tendered its defense of Mrs. Blanchard's claims along with the defense of her claims against its contractor, All Coast. SBS's defense and indemnity obligations under the MSA extend to Sanare's contractors. For the purposes of this Motion, any reference to "Sanare's tender" and/or "claims against Sanare" shall collectively refer to the tender of both Sanare and All Coast and the claims asserted against both companies.
[5] *Id*. at Section 4.4.
[6] The MSA obligated SBS to invoice Sanare for the premiums associated with naming Sanare as an additional insured. *Id*. at Section 3.6.
[7] Mrs. Blanchard has asserted claims for wrongful death and survivorship on behalf of herself and Blanchard's minor child, W.B. *See* Exhibit "D" to Sanare's Answer, Counterclaim, and Third-Party Demand (Rec. Doc. 49)
[8] *See* Civil Action No. 22-cv-2420, United States District Court for the Southern District of Texas, Houston Division, Rec. Doc. 1.
[9] *Id.* at Rec. Doc. 11.
[10] *Id*. at Rec. Doc. 36.
[11] *See* July 6, 2022 correspondence, attached as Exhibit "F" to Sanare's Answer, Counterclaim, and Third-Party Demand (Rec. Doc. 49).
[12] *See* August 3, 2022 correspondence from Kinsale, attached as Exhibit "H" to Sanare's Answer, Counterclaim, and Third-Party Demand (Rec. Doc. 49). To date, Sanare has not received a response to its tender from SBS.

Motion to Dismiss — (1) the Marine Liability Exclusion; and (2) the Aircraft, Auto, or Watercraft Exclusion. The exclusions, however, are not triggered by the facts of this case and/or do not preclude coverage in Sanare's favor. Regardless of Kinsale's position as to whether Sanare will ultimately prevail on its claims, Sanare has more than met its burden of pleading a plausible set of facts under which it would be entitled to recovery. Thus, Kinsale's attempt to dismiss Sanare's Counterclaim under Rule 12(b)(6) should be denied.

## LAW AND ARGUMENT

I. **Rule 12(b)(6) Standard**

Rule 12(b)(6) motions to dismiss are "generally disfavored and rarely granted." *CertainTeed Corp. v. Mayfield*, 2020 WL 1953615, at *5 (E.D. La. Apr. 23, 2020). In deciding a Rule 12(b)(6) motion to dismiss, the Court must consider the plaintiff's factual allegations as true and resolve all ambiguities or doubts regarding the sufficiency of the complaint in the plaintiff's favor. *Bill Ward Builders, LLC v. Low Group*, 2010 U.S. Dist. LEXIS 49872 (E.D. La. Apr. 26, 2010). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint but challenges the plaintiff's rights to relief based upon those facts." *Richard v. Island Operating Co.*, No. CIV.A. 11-0419, 2015 WL 403155, at *2 (W.D. La. Jan. 27, 2015) (internal citations omitted). Indeed, pleadings should be construed liberally and a dismissal under 12(b)(6) motion is appropriate only if there are no disputed issues of fact. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002). In sum, the issue in a 12(b)(6) motion "is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Id.*

II. **Kinsale has not met its burden of proving that Sanare's Counterclaim fails to set forth a plausible claim for relief.**

Rather than articulating how, accepting the factual allegations in Sanare's Counterclaim as true, Sanare has failed to plead a plausible claim for relief, Kinsale improperly focuses its

arguments on whether Sanare will ultimately prevail on its claims. In so doing, Kinsale argues the substance of Sanare's claims, not the alleged insufficiency of its pleading. Notably, Kinsale fails to cite to a single paragraph and/or allegation of Sanare's Counterclaim as inadequate or otherwise articulate how Sanare's Counterclaim fails to meet the applicable pleading requirements. This is because Sanare has pleaded a plausible claim for relief—if the MSA is a maritime contract, then the defense, indemnity and insurance obligations owed by SBS to Sanare are enforceable. The MSA qualifies as an insured contract under the subject policy to which the exclusions cited by Kinsale do not apply. Because Kinsale has failed to meet its burden of establishing otherwise, its Motion to Dismiss should be denied.

**III.     The Marine Liability and Watercraft Exclusions Do Not Apply**

Kinsale cites two policy exclusions in support of its position that coverage under the policy is not owed—the Marine Liability Exclusion and the Aircraft, Auto, or Watercraft Exclusion. A plain reading of these exclusions and basic understanding of the facts of the case establish that neither of these exclusions apply. Kinsale's arguments regarding the policy's Watercraft Exclusion can be easily disposed of. The clear language of the Exclusion provides that it applies to bodily injuries arising out of the "ownership, maintenance, use, or entrustment to others of any aircraft, auto, or watercraft owned or operated by or rented or loaned to any insured…"[13] This incident arises out of the installation and/or design failure of an HWOU, which is not an aircraft, automobile, or watercraft. The fact that Mr. Blanchard was living and working on a lift boat at the time the incident occurred does not, in and of itself, trigger the application of Watercraft Exclusion.

Kinsale also attempts to establish that the claims against Sanare are excluded under the policy because they "might be" covered by some other type of marine liability insurance. The

---

[13] Rec. Doc. 1-3, p. 71 of 91.

Marine Liability Exclusion states that no coverage under the policy is owed for bodily injuries that might be covered under a Hull, Protection, & Indemnity Policy ("P&I"), Marine Operator's Legal Liability Policy, Charter's Legal Liability Policy, or "other similar marine insurance coverage on owned, operated, chartered, or brokered watercraft."[14] Kinsale goes on to provide short descriptions of each of the four marine liability policies listed in the Marine Liability Exclusion but fails to articulate how the claims in this litigation fall under any of the enumerated policies. Kinsale's argument is based on speculation – a guess – with Kinsale concluding that "[b]ecause one of the different types of marine liability policies **might have provided coverage** for the claims arising out of the bodily injury and death of Blanchard had marine liability insurance been purchased by SBS**—and regardless of whether or not it actually was purchased by SBS**—there is no coverage under the Policy issued by Kinsale for this type of claim." (Rec. Doc. 56. P. 10) (emphasis added). Guess work by Kinsale does not render the well pleaded allegations of Sanare not plausible as required to support a 12(b)(6) motion to dismiss. See *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

Further, Mrs. Blanchard's claim would not be covered by any of the four marine liability policies listed in the Kinsale Marine Liability Exclusion because <u>SBS was not a vessel owner</u>, charterer, or operator. The liabilities at issue are not liabilities to which SBS is exposed in a capacity as a vessel owner, charterer, or operator, are not related to injury or death caused by a vessel, and do not arise out of the operation, ownership, chartering, maintenance, use, repair, or construction of a vessel.

The cases cited by Kinsale—*Farrell Lines, Inc. v. Ins. Co. of N. Am.* and *In re Athena Const., LLC*—involved the issue of whether insurance coverage was owed <u>to a vessel owner</u>. *See Farrell Lines, Inc. v. Ins. Co. of N. Am.*, 789 F.2d 300 (5th Cir. 1986) and *In re Athena Const.,*

---

[14] Rec. Doc. 1-3 p. 72 of 91

*L.L.C.*, No. CIV.A. 06-2004, 2008 WL 3153038 (W.D. La. Aug. 4, 2008). As with the other cases cited by Kinsale, the *Farrell Lines* and *In re Athena Const.* cases did not involve motions to dismiss under Rule 12(b)(6) or enforcement of defense and indemnity obligations assumed under a maritime contract. Additionally, in *In re Athena Const.*, the insurer's motion for summary judgment was unopposed and it was undisputed that the incident arose out of the ownership and/or maintenance and/or use of a watercraft owned by its insured. *In re Athena Const., L.L.C.*, No. CIV.A. 06-2004, 2008 WL 3153038, at *2 (W.D. La. Aug. 4, 2008).

## CONCLUSION

Sanare's Counterclaim sets forth a plausible set of facts that, when established, will entitle it to additional insured status under the Kinsale policy. For these reasons, and those set forth above, Kinsale's Rule 12(b)(6) Motion to Dismiss should be denied.

Respectfully submitted,

*/s/ Robert R. Johnston*
Robert R. Johnston, T.A. (#22442)
Constance C. Waguespack (#36416)
Courtney E. Crowell (#38708) *To be Admitted Pro Hac Vice*
Andrew J. Wondolowski (#40998)
Wade B. Hammett (#31186)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Robert.Johnston@pjgglaw.com
Constance.Waguespack@pjgglaw.com
Courtney.Crowell@pjgglaw.com
Andrew.Wondolowski@pjgglaw.com
Wade.Hammett@pjgglaw.com
**COUNSEL FOR SANARE ENERGY PARTNERS, LLC**
*Admitted Pro Hac Vice*

**AND**

M. Matt Jett
Texas Bar No. 24068684

7

S.D. Tex No. 1091711
mjett@hallmaineslugrin.com
**HALL MAINES LUGRIN, P.C.**
Williams Tower, Suite 6400
2800 Post Oak Boulevard
Houston, TX 77056-6125
Tel: 713-871-9000
Fax: 713-871-8962
*To be Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of March, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all known counsel by operation of the court's electronic filing system. I further certify that I shall mail the foregoing document and the notice of electronic filing by first-class mail to all non CM/ECF participants.

*/s/ Robert R. Johnston*