**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Kinsale Insurance Company | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23–CV–04680 |
| | § | |
| Sanare Energy Partners LLC | § | |
|    Defendant. | § | |

**KINSALE INSURANCE COMPANY'S
RULE 12(B)(6) MOTION TO DISMISS CROSSCLAIM**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Kinsale Insurance Company ("Kinsale") moves to dismiss the crossclaim asserted by Third-Party Defendant / Plaintiff-in-Crossclaim SBS Energy Services, LLC ("SBS") (part of Doc. 69) because claims asserted by SBS against Kinsale do not state a claim upon which relief can be granted. Kinsale notes that the arguments in this motion to dismiss are very similar to arguments already pending before this Court in the motion to dismiss that Kinsale filed on March 8, 2024 (Doc. 56), and indeed, they are also very similar to the arguments that Kinsale first asserted in a motion to dismiss back on October 17, 2023, when this case was still pending in the Eastern District of Louisiana (Doc. 14.).

**I.      Summary of Argument**

In a different lawsuit, Laci Blanchard sued Sanare Energy Partners, LLC ("Sanare") alleging that Ronnie Blanchard, an employee of SBS, died while working offshore on equipment associated with an offshore worksite owned and/or operated by Sanare. In this lawsuit, Kinsale filed suit against Sanare seeking a declaration that there is no coverage for

Blanchard's claims under the Environmental Combined Liability Policy issued by Kinsale to SBS. (Doc 1; Doc. 39.) Sanare counterclaimed against Kinsale, alleging coverage, and in the same document also filed a third-party demand against SBS. (Doc. 49.) Kinsale filed a motion to dismiss the counterclaim under two exclusions, either of which alone would preclude coverage. (Doc. 56.) First, the Marine Liability Exclusion—which applies when claims might have been covered under one or more of the marine liability policies listed in the exclusion if they had been purchased—clearly applies here. Second, the Watercraft Exclusion applies because the L/B Swordfish, the boat on which Blanchard was living and working, constitutes a "watercraft" under the Policy. In response to the third-party demand, SBS filed an Answer and a Crossclaim against Kinsale (Doc. 69.) Kinsale now moves to dismiss the Crossclaim for the same reasons that Kinsale moved to dismiss the Counterclaim: (1) the Marine Liability Exclusion and/or (2) the Watercraft Exclusion.

## II.     Nature and Stage of the Proceeding

On April 8, 2022, Laci Blanchard filed a lawsuit against Sanare that was subsequently removed to federal court. (Doc. 69, Crossclaim, ¶ 10). The case *is Blanchard v. Sanare Energy Partners LLC*, No. 4:22-cv-2420 (S.D. Tex.) (the "Blanchard Lawsuit") (See Doc. 1-1, which is the First Amended Complaint). The Blanchard Lawsuit alleges that on March 25, 2022, Ronnie Blanchard was working offshore for SBS on the LB SWORDFISH. (Doc. 1-1, ¶¶ 9-10). The Blanchard Lawsuit alleges that Ronnie Blanchard was injured while working offshore on equipment associated with an offshore worksite owned and/or operated by Sanare and, as a result, died. (Doc. 1-1, ¶ 1).

This lawsuit began when Kinsale filed a Complaint for Declaratory Relief against Sanare to seek a declaration by this Court that there is no coverage to Sanare under the Environmental Combined Liability Policy issued by Kinsale to SBS for the claims in the Blanchard Lawsuit. (Doc. 1). In response, Sanare filed an Answer, a Counterclaim against Kinsale seeking a declaratory judgment that there is coverage to Sanare under that policy, and a third-party complaint against SBS. (Doc. 7).

On October 17, 2023, Kinsale filed a Rule 12(b)(6) Motion to Dismiss Sanare's Counterclaim (Doc. 14) and a Rule 14(a)(4) Motion to Strike Sanare's Third-Party Complaint against SBS (Doc. 13). On December 12, 2023, this case was transferred *sua sponte* from the Eastern District of Louisiana to this Court (Doc. 30). Pursuant to this Court's Order for Conference and Disclosure of Interested Parties (Doc. 32), Kinsale filed an Amended Complaint on January 3, 2024 (Doc. 39). On January 25, 2024, Sanare filed its Answer to Kinsale's Amended Complaint, Counterclaim for Declaratory Judgment and Breach of Contract, and Third-Party Complaint against SBS in this Court (Doc. 49).

To return this case to the procedural state that it was in before the transfer, Kinsale once again filed a Rule 12(b)(6) Motion to Dismiss Sanare's Counterclaim (Doc. 56) and a motion to strike the third-party complaint against SBS (Doc. 55). Both motions were substantially similar to the motions that were fully briefed and awaiting decision before transfer except that, on the motion to dismiss, Kinsale's original motion asserted three arguments, but the amended motion was limited to two of those three arguments (the Marine Liability Exclusion and the Watercraft Exclusion) because if one of those two

exclusions apply, it is not necessary to decide if the third exclusion (an Employers Liability Exclusion) also applies.

SBS filed an Answer to the Third-Party Demand and, in the same document, filed its first Crossclaim against Kinsale. (Doc. 69.) The arguments for insurance coverage made in the Crossclaim are virtually identical to the arguments for insurance coverage made in the Counterclaim. Thus, Kinsale files this motion to dismiss the Crossclaim for the same reasons that are already fully briefed to this Court as to the Counterclaim.

### III. Statement of Facts

Kinsale files this motion to dismiss to show that, as a matter of law, there is no coverage to SBS under the Environmental Combined Liability Policy purchased by SBS from Kinsale. Specifically, Kinsale issued to SBS Policy No. 0100158459-0 (the "Policy") (Doc. 1-3). The Policy was in effect from August 1, 2021, to August 1, 2022. (Doc. 1-3.) The arguments in this motion are based on two different exclusions in the Policy.

First, the Policy includes a "Marine Liability" exclusion. This exclusion states:

> This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury", including but not limited to any contractual liability that might be covered under any:
>
> 1. Hull, Protection & Indemnity Policy (P&I);
>
> 2. Marine Operator's Legal Liability Policy;
>
> 3. Charterer's Legal Liability Policy; or
>
> 4. Other similar marine insurance coverage on owned, operated, chartered or brokered watercraft.

4

> This exclusion applies regardless of whether or not such insurance is collectable, has been purchased, is in force or its limits of insurance are available.

(Doc. 1-3, p. 72 of 91.) Thus, there is no coverage for liability that might have been covered by a marine liability insurance policy—regardless of whether SBS actually purchased such a policy.

Second, the Policy contains an "Absolute Auto, Aircraft and Watercraft" exclusion. This exclusion states:

> This insurance does not apply to:
>
> \*   \*   \*
>
> **g.  Aircraft, Auto or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading" and the handling and placing of persons, by an insured, into, onto or from an "auto".
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

(Doc. 1-3, pp. 8, 56 of 91.) Thus, there is no coverage for any bodily injury arising out of the use of a watercraft.

5

### IV. Statement of the Issues and Standard of Review

Whether SBS fails to state a claim upon which relief can be granted in its Crossclaim seeking coverage for claims in the third-party demand filed by Sanare against SBS based on claims in the Blanchard lawsuit when the Blanchard lawsuit involves claims of injury to an employee working offshore on a watercraft when two separate policy exclusions preclude such coverage.

An insurance policy issued in Louisiana is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. La. C.C. art. 1983. The policy is a contract and thus must be construed employing the general rules of interpretation of contracts. *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 638-39 (La. 2007); La. C.C. arts. 2045-2057. It is well settled that unless a statute or public policy dictates otherwise, the insurer may limit liability and impose reasonable conditions or limitations upon the insureds. *Supreme Servs.*, 958 So. 2d at 638-39. As such, an unambiguous provision limiting liability must be given effect. *Id.* at 639. Moreover, "freedom to contract" is an "important public policy in Louisiana," and therefore courts will enforce the provisions in an insurance policy issued to a commercial entity. *Creekstone Juban I, LLC v. XL Ins. Am., Inc.*, 282 So. 3d 1042, 1050 (La. 2019).

On a motion to dismiss, all well-pleaded facts are accepted as true. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). In addition to facts alleged in

6

pleadings, a district court considering a motion to dismiss may also consider documents incorporated into the complaint by reference and matters of which the court may take judicial notice, including matters of public record. *Marchman v. Crawford*, 726 F. App'x 978, 984 (5th Cir. 2018). A federal court sitting in diversity applies state substantive law. *Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017) (*citing Erise R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

### V.     Argument

The Policy provides coverage for certain types of damages and excludes coverage for other types of damages. It does not provide coverage for damages when an employee of SBS is injured or dies while working offshore. The Policy makes that clear in two different exclusions, either of which is a basis for ruling that there is no coverage here.

#### A.     Marine Liability Exclusion.

The first reason that there is no coverage here is the Marine Liability Exclusion. As noted above, the Marine Liability Exclusion provides that there is no coverage for any bodily injury "that might be covered under any" of four categories of marine liability insurance policies:

1. Hull, Protection & Indemnity Policy (P&I);
2. Marine Operator's Legal Liability Policy;
3. Charterer's Legal Liability Policy; or
4. Other similar marine insurance coverage on owned, operated, chartered or brokered watercraft.

7

(Doc. 1-3, p. 72 of 91). This exclusion also states: "This exclusion applies regardless of whether or not such insurance is collectable, has been purchased, is in force or its limits of insurance are available." *Id.*

The four categories of marine liability policies listed in the exclusion are all policies of marine insurance that are designed to respond to personal injury or death claims by personnel working offshore. *See* Robert T. Lemmon, II, *Allocation of Marine Risks: An Overview of the Marine Insurance Package,* 81 Tul. L. Rev. 1467 (June 2007) (cited as "Lemmon"). The first policy identified in the exclusion is a Hull, Protection & Indemnity Policy (P&I). A P&I Policy generally provides coverage for liability of a vessel owner in its capacity as a vessel owner when personal injury and death are caused by its vessel. *Id.; see also* La. R.S. § 22:47(13)(e) (defining "Marine protection and indemnity insurance" as providing "coverage for any legal liability assumed by an insured for loss, damage, or expense incident to ownership, operation, chartering, maintenance, use, repair, or construction of any vessel, craft, or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness, or death or for the loss of or damage to the property of another person . . . .)." The second and third policies identified in the exclusion are a Marine Operator's Legal Liability Policy and a Charterer's Legal Liability Policy. These two policies provide similar coverage to that of P&I but for circumstances where—as here—the operator of the vessel against which liability is alleged is not also the owner of the vessel. Lemmon, *supra*, at 1488; *Randall v. Chevron U.S.A.*, Inc., 788 F. Supp. 1398, 1404-05 (E.D. La. 1992). And the fourth item listed in the exclusion is a catch-all for other types of marine liability insurance that could have been

8

purchased: "Other similar marine insurance coverage on owned, operated, chartered or brokered watercraft." (Doc. 1-3, p. 72 of 91). The point is that the Kinsale policy is not a marine liability policy. If that coverage was desired, it had to be purchased separately.

The exclusion states that it applies whenever the liability might have been covered under any of these types of marine liability policy. There is no requirement that the policy be purchased by SBS. For example, if SBS was doing work for a marine charterer, SBS might insist that it be added as an additional insured to a Charterer's Legal Liability Policy that was purchased by a charterer. And there is also no requirement that the marine liability coverage be purchased by anyone. In other words, an insured cannot expand coverage under Kinsale's Policy by declining to purchase marine liability coverage from another insurer. By using this broad language, the exclusion makes it clear that in any circumstance in which a liability might have been covered by a marine liability policy of any type, that is not the type of coverage that Kinsale provided under this policy.

The clear language of this exclusion plainly applies here. The claims arise out of Blanchard's death while working offshore. As such, the claims not only "might be covered," which is all that is required for coverage to be excluded under the Kinsale Policy, but almost certainly would have been covered under one or more of the marine liability policies listed in this exclusion. These are policies designed to respond to marine personal injury and death liabilities. Clearly, Blanchard's injury is the type of claim that "might" be covered under one of these types of marine liability policies that someone could have purchased.

Courts routinely exclude coverage for injuries related to marine liability when a policy contains a marine liability exclusion. For example, in *Farrell Lines, Inc. v. Ins. Co. of N. Am.*, 789 F.2d 300 (5th Cir. 1986), a longshoreman was injured when he was in a tractor-trailer and attempting to load a shipping container onto a vessel. An insurance company issued a Comprehensive Liability Policy that contained a marine liability exclusion "which stated that the policy did not cover 'any occurrence or accident which is or would be covered in whole or in part under Protection and Indemnity policy of Marine Insurance . . . .'" *Id.* at 304. The district court held that there was no coverage in light of the exclusion, and the Fifth Circuit affirmed, stating that "it cannot be accepted that the risk arising from longshoreman Glasper's injury would lie outside the coverage afforded by P & I policy." *Id.*

Citing and following *Farrell Lines*, in *In re Athena Const., L.L.C.*, No. CIV.A. 06-2004, 2008 WL 3153038 (W.D. La. Aug. 4, 2008), the court held that there was no coverage in light of a marine liability exclusion that excluded coverage for any injury that might be recoverable under the same three types of policies that are identified in the exclusion at issue in this case.[1] In that case, there was an explosion resulting in injuries

---

[1] Specifically, the exclusion stated: "This does not apply to any claim, injury, loss or damage that may be recoverable under any Hull, Protection & Indemnity (P & I) policy including claims for contractual liability; Marine Operators Legal Liability; Charterers Legal Liability, or, any similar marine insurance coverages on owned, operated, chartered, or brokered watercraft regardless of whether such insurance has been purchased, is in force or the limits of liability are available." *In re Athena Const., L.L.C.*, No. CIV.A. 06-2004, 2008 WL 3153038, at *2 (W.D. La. Aug. 4, 2008).

10

when a vessel collided with a pipeline. The court cited *Farrell* and found the exclusion applicable. *Id.* at *4.

Similarly, in *In re Antill Pipeline Const. Co., Inc.*, No. CIV.A. 09-3646, 2013 WL 64609 (E.D. La. Jan. 4, 2013), there was a vessel allision resulting in the death of five people on board, and the question was whether an excess commercial liability policy issued by Chartis provided coverage. The Chartis policy had marine liability exclusion that stated: "This insurance does not apply to any marine liability which includes, but is not limited to, the following:" followed by a listing of numerous policy types including "Charterer's Liability," "Protection and Indemnity Liability," and "Ship Builders Liability."[2] The court held that the marine liability exclusion clearly excluded any coverage under the Chartis policy for the injury, stating that "the Court finds as a matter of law that any resulting liability is necessarily a 'marine' one under either maritime or Louisiana law, regardless of how Antill's direct claims against Tarpon are presented." *Id.* at *1.

When Kinsale indicated its intention to file this motion, SBS stated in its letter response (Doc. 73) that SBS is also seeking coverage for its alleged breach of its contractual duty to defend and indemnify Sanare, and SBS argued that this claim is not something for which marine liability insurance would provide coverage. But the Kinsale policy also does not provide coverage for such a claim because it is merely a claim that SBS failed to do something—that it failed to defend and indemnify. That is not an "occurrence" under a liability policy and thus there is an independent reason that there is no coverage for that

---

[2] *In re Antill Pipeline Const. Co., Inc.*, No. CIV.A. 09-3646, 2012 WL 5423709, at *2 (E.D. La. Nov. 6, 2012)

claim. An intentional decision not to do something is not an accident and thus is not covered under a liability policy that provides coverage for an occurrence. *Cole-Gill v. Moore*, 862 So. 2d 1197, 1205-06. Similarly, an allegation that a party negligently failed to do what it was supposed to do does not allege an occurrence. As one court explained, an allegation that a party "failed to fulfill its contractual obligations set forth in the Subcontract Agreements" does not "amount to an 'accident' for the purpose of triggering coverage under the CGL policy." *J. Caldarera & Co. v. Triumph Constr., L.L.C.*, 330 So. 3d 364, 369 (La. App. 5 Cir. 2021). Thus, SBS cannot circumvent the marine liability exclusion by pointing to another allegation for which there is no coverage for an independent reason.

Because one of the different types of marine liability policies might have provided coverage for the claims arising out of the bodily injury and death of Blanchard had marine liability insurance been purchased by SBS—and regardless of whether or not it actually was purchased by SBS—there is no coverage under the Policy issued by Kinsale for this type of claim.

### B. Watercraft exclusion.

A second and independent reason that there is no coverage is that there is a watercraft exclusion in the Policy. This exclusion applies to any bodily injury "arising out of the … use . . . of any . . . watercraft." (Doc. 1-3, pp. 8, 56 of 91).

"A watercraft is commonly understood to be a boat, a vessel, or some other apparatus that goes about on the water." *Viator v. Dauterive Contractors, Inc.*, 831 So. 2d

407, 408 (La. App. 5 Cir. 2002).[3] Blanchard was living and working on the L/B SWORDFISH, which is a type of boat. As the Counterclaim states, it is a "liftboat that is capable of being temporarily affixed to the surface via 'legs' that extend downward through the water and into the seabed." (Doc. 49, Counterclaim, ¶ 10). Thus, it is a "watercraft."

Blanchard was injured while working offshore, and his injury clearly arose out of the use of the L/B SWORDFISH. The Counterclaim alleges that the watercraft was serving "as a workspace for operations" being conducted by Blanchard and even alleges that "[i]t was expressly contemplated by both Sanare and SBS at the time of contracting that vessels, including the L/B SWORDFISH, would play a substantial role" in the work that Blanchard was doing. (Doc. 49, Counterclaim, ¶ 17). And in the third-party demand by Sanare against SBS, which is the reason that SBS is in this case and the basis of the Crossclaim against Kinsale, Sanare alleges that "the services SBS was providing to Sanare at the time of the incident could not have been performed without the use of a liftboat like the L/B SWORDFISH." (Doc. 49, Third-Party Demand, ¶ 14). Thus, there was a bodily injury arising out of the use of a watercraft. Indeed, the activities Blanchard was doing when he unfortunately died could not have been performed without the use of the liftboat. The watercraft exclusion excludes this type of coverage.

The Louisiana Supreme Court has confirmed that a watercraft exclusion is applicable in these circumstances. *Henry v. S. Louisiana Sugars Co-op., Inc.*, 957 So. 2d

---

[3] Similarly, the dictionary definition of "watercraft" is a "ship, boat" or "craft for water transport." *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/watercraft (last checked March 4, 2024).

1275 (La. 2007). In *Henry*, the Supreme Court found a watercraft exclusion applicable when a worker was injured as he slipped on a gangplank between a moored barge that was used as a dock and a cargo barge. Like here, the exclusion in that policy applied when there was a bodily injury "arising out of the . . . use . . . of any . . . watercraft . . . ." *Id.* at 1278. The Supreme Court held: "The watercraft exclusion in the Audubon CGL policy unambiguously denies coverage for the alleged injuries sustained by the Henry plaintiffs in the main demand." *Id.* at 1280.

The federal Fifth Circuit has also applied the watercraft exclusion in circumstances like these. In *Holden v. U.S. United Ocean Servs., L.L.C.*, 582 F. App'x 271 (5th Cir. 2014), an employee of the named insured was injured while preparing to remove a gangway that led from a dock to a barge owned by the alleged additional insured. *Id.* at 272. The insurer for the named insured argued that no coverage was provided for the alleged additional insured because of a watercraft exclusion. The trial court agreed that there was no coverage, and the Fifth Circuit affirmed. In that case, the watercraft exclusion said that it applied when there was a bodily injury "arising out of the ownership or operation of any watercraft . . . ." *Id.* at 274.

Similarly, in *Johnson v. Seacor Marine Corp.*, 404 F.3d 871 (5th Cir. 2005), three individuals employed by the named insured on an insurance policy were injured while transferring between offshore platforms and a watercraft. *Id.* at 874. The insurance policy issued to the named insured had a watercraft exclusion that excluded coverage for a bodily injury "arising out of the . . . use . . . of any aircraft, 'auto' or watercraft . . ." *Id.* at 874 n.1. The Fifth Circuit held that even if SEACOR, the entity sued by the employees, had

14

additional insured status under the insurance policy issued to the named insured (the employer of the injured plaintiffs), there was still no coverage because of the watercraft exclusion. "The watercraft exclusion plainly excludes coverage to SEACOR." *Id.* at 877.

Here, the watercraft exclusion plainly excludes coverage. Thus, this is a second, independent basis to grant this motion.

### VI.     Conclusion

In the *In re Athena Construction* case cited above, the federal district court held that there was no coverage under an insurance policy because multiple exclusions applied including (1) a marine insurance exclusion and (2) a watercraft exclusion. The same is true here. Pursuant to either exclusion, as a matter of law, the Policy provides no coverage for damages arising out of the bodily jury to Mr. Blanchard. Accordingly, Kinsale requests dismissal of SBS's Crossclaim for insurance coverage because it fails to state a claim upon which relief can be granted.

Respectfully submitted,

By: */s/ Matthew C. Guy*
**Matthew C. Guy** (Attorney-in-Charge)
State Bar No. 24050702
Fed. Bar No. 622802
**Collin M. Weyand** (Of Counsel)
State Bar No. 24106763
Fed. Bar No. 3251459
**Jeffrey E. Richardson** (Of Counsel)
La. Bar No. 23273
ADAMS AND REESE LLP
1221 McKinney, Suite 4400
Houston, Texas 77010
Phone: (713) 652-5151
Fax: (713) 652-5152
Email: Matthew.Guy@arlaw.com
Email: Collin.Weyand@arlaw.com
Email: Jeff.Richardson@arlaw.com

**Attorneys for Kinsale Insurance Company**

**CERTIFICATE OF SERVICE**

  The undersigned Counsel hereby certifies that the foregoing has been served via ECF and/or email on this 23rd day of July, 2024, to the following:

  Robert R. Johnston, T.A.
  Robert.Johnston@pjgglaw.com
  Constance C. Waguespack
  Constance.Waguespack@pjgglaw.com
  Courtney E. Crowell
  Courtney.Crowell@pjgglaw.com
  Wade B. Hammett
  Wade.Hammett@pjgglaw.com
  PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC
  1100 Poydras Street, Suite 2250
  New Orleans, LA 70163

  M. Matt Jett
  mjett@hallmaineslugrin.com
  Caroline E. Bossier
  cbossier@hallmaineslugrin.com
  Aaron E. Koenck
  akoenck@hallmaineslugrin.com
  HALL MAINES LUGRIN, P.C.
  2800 Post Oak Boulevard
  Houston, TX 77056-6125

  R. Scott Jenkins
  sjenkins@joneswalker.com
  Edward F. Lebreton
  elebreton@joneswalker.com
  Jones Walker LLP
  201 St. Charles Avenue, Suite 5100
  New Orleans, Louisiana 70170-5100
  Telephone: (504) 582-8000
  Facsimile: (504) 582-8583

Hannah A. Mayfield
hmayfield@joneswalker.com
Jones Walker LLP
811 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 437-1800
Facsimile: (713) 437-1810

*/s/ Matthew C. Guy*
*Matthew C. Guy*

## Certificate of Conference

I certify that, on June 28, 2024, I conferred with counsel for SBS via email concerning the relief to be requested by Kinsale. We were unable to reach agreement on the relief to be requested.

*/s/ Collin M. Weyand*
Collin M. Weyand