IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KINSALE INSURANCE COMPANY | * | CIVIL ACTION NO. 4:23-cv-04680 |
| | * | |
| v. | * | DISTRICT JUDGE: |
| | * | HON. GEORGE C. HANKS, JR. |
| SANARE ENERGY PARTNERS, LLC | * | |
| | * | MAGISTRTE JUDGE: |
| | * | HON. ANDREW M. EDISON |

**SBS ENERGY SERVICES, LLC'S
OPPOSITION TO KINSALE INSURANCE COMPANY'S
RULE 12(b)(6) MOTION TO DISMISS CROSSCLAIM**

### JONES WALKER LLP

*/s/ R. Scott Jenkins*
R. SCOTT JENKINS, *attorney-in-charge*
LA Bar No. 23144
SDTX No. 3610494
sjenkins@joneswalker.com
EDWARD F. LEBRETON
TX Bar No. 00789066
SDTX No. 23016
elebreton@joneswalker.com
Jones Walker LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
Telephone:   (504) 582-8000
Facsimile:    (504) 582-8583

AND

HANNAH A. MAYFIELD
TX Bar No. 24115036
SDTX No. 3608924
hmayfield@joneswalker.com
Jones Walker LLP
811 Main Street, Suite 2900
Houston, Texas 77002
Telephone:   (713) 437-1800
Facsimile:    (713) 437-1810
***Counsel for Defendant
SBS Energy Services, LLC***

# TABLE OF CONTENTS

SHORT STAEMENT OF THE NATURE AND STAGE OF PRCEEDINGS ............................... 1

STATEMENT OF THE ISSUES TO BE RULED UPON ............................................................ 2

SUMMARY OF ARGUMENT ....................................................................................................... 2

THE PROCEEDINGS AND ALLEGATIONS ............................................................................. 3

STANDARDS FOR RULE 12 MOTION AND INTERPRETATION OF THE POLICY ............ 7

THE COVERAGE ISSUES WITH RESPECT TO SANARE AND SBS ARE NOT
        IDENTICAL ...................................................................................................................... 9

KINSALE'S ARGUMENTS ......................................................................................................... 10

THE MARINE LIABILITIES EXCLUSION DOES NOT APPLY ............................................ 10

THE WATERCRAFT EXCLUSION DOES NOT APPLY ......................................................... 13

ORAL ARGUMENT .................................................................................................................... 17

CONCLUSION ............................................................................................................................. 17

CERTIFICATE OF SERVICE ..................................................................................................... 18

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KINSALE INSURANCE COMPANY | * | CIVIL ACTION NO. 4:23-cv-04680 |
| | * | |
| v. | * | DISTRICT JUDGE: |
| | * | HON. GEORGE C. HANKS, JR. |
| SANARE ENERGY PARTNERS, LLC | * | |
| | * | MAGISTRTE JUDGE: |
| | * | HON. ANDREW M. EDISON |

**SBS ENERGY SERVICES, LLC'S
OPPOSITION TO KINSALE INSURANCE COMPANY'S
RULE 12(b)(6) MOTION TO DISMISS CROSSCLAIM**

SBS Energy Services, LLC ("SBS") submits this opposition to the Kinsale Insurance Company's Rule 12(b)(6) Moton to Dismiss Crossclaim. R. Doc. 78. ("Kinsale"). Kinsale issued an Environmental Combined Liability Policy to SBS. R. Doc. 1-3 (the "Policy"). The motion seeks to dismiss SBS's Crossclaim against Kinsale for defense and indemnity of the Third-Party Complaint of Sanare Energy Partners, LLC ("Sanare") for contractual defense and indemnity. R. Doc. 69.

Kinsale relies on two exclusions in the Policy: the Marine Liabilities Exclusion and the Watercraft Exclusion. R. Doc. 1-3, p. p. 10, 37, 56, 71. The pleadings and law show that these exclusions are ambiguous, contradictory, and inapplicable. They do not exclude coverage of Sanare's claim against SBS, and the motion should be denied.

**SHORT STAEMENT OF THE NATURE AND STAGE OF PRCEEDINGS**

Kinsale filed this action to determine its coverage of Sanare with respect to the claims of Laci Blanchard for the death of her husband Ronnie Blanchard. Those claims are pending in a companion case before Your Honor, *Blanchard v. Sanare Energy Partners LLC,* No. 4:22-cv-2420 (S.D. Tex.) (the "Blanchard Lawsuit"). SBS filed a Crossclaim against Kinsale for a declaration

#102503671v1

1

that Kinsale insures SBS for the Third-Party Complaint of Sanare against SBS for contractual defense and indemnity. R. Doc. 69. This motion is Kinsale's Rule 12(b)(6) motion to dismiss SBS's Crossclaim.

The pleadings are complete, but otherwise this case is in the early stage of proceedings. Trial is set for July/August 2025. Docket Control Order, R. Doc. 67.

## STATEMENT OF THE ISSUES TO BE RULED UPON

The issues to be ruled upon are whether Kinsale has met its burden to show that its Marine Liabilities Exclusion or its Watercraft Exclusion exclude its coverage of Sanare's Third-Party Complaint against SBS for contractual defense and indemnity of the claims of Laci Blanchard against Sanare. R. Doc. 69; R. Doc. 78.

The standard of review is whether SBS's Crossclaim contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

In this regard, Kinsale has the burden to show that the Marine Liabilities Exclusion and the Watercraft Exclusion apply. *Lewis v State Nat' Ins. Co., Inc.*, 2022-0693, p, 24 (La. 4 Cir. 5/19/23), 368 So, 3d 653, 668; *Grilletta v. Lexington Ins. Co.*, 558 F. 3d 359, 364 (5th Cir. 2009). In addition, ambiguities, particularly those arising from contradictory policy terms, must be resolved against Kinsale and in favor of SBS and coverage. *Collins v. A.B.C. Marine Towing, L.L.C*., 123 F. Supp. 3d 841, 847 (E.D. La. 2015); *Rapides Station Land Co. LLC v. Markel Am. Ins. Co*., 2024 U.S. Dist. LEXIS 117744, *25-26 (W.D. La. 2024).

## SUMMARY OF ARGUMENT

The contractual liability claim of Sanare against SBS is covered by Kinsale as an "insured contract." In these circumstances, Kinsale has the burden to show that its Marine Liabilities Exclusion and Watercraft Exclusion exclude coverage of Sanare's claim. Kinsale has failed to

#102503671v1

2

carry this burden. In addition, doubts and ambiguities regarding the exclusions must be resolved against Kinsale and in favor of SBS and coverage.

The Marine Liabilities Exclusion generally excludes claims covered by four broad types of policies. First, it does not apply because Kinsale has failed to show that any of the four broad types of policies would insure SBS for the contractual liability claimed by Sanare. Indeed, contractual liability generally is covered by general liability policies such as Kinsale's Policy. Second, the Marine Liabilities Exclusion is ambiguous because it references four general types of policies without defining exactly what they would cover and, therefore, what is excluded. The four broad types of policies listed in the Marine Liabilities Exclusion insure vessel owners, operators, charterers, brokers, and SBS was none of these.

The Watercraft Exclusion does not apply first because it is amended to make an exception for watercraft that SBS does not own, and there is no allegation that SBS owned any watercraft involved in the accident. Second, the Watercraft Exclusion does not apply because the pleadings do not allege that the loss arose out of the use of a watercraft. Third, in the alternative, the Watercraft Exclusion ambiguous and contrary to other provisions of the Policy. If the Court finds that the amendments to the Watercraft Exclusion may not provide coverage, at the least they are ambiguous and contradictory. Further, the Policy was specifically purchased to cover loses on fixed platform in the Gulf of Mexico, such as the claim of Blanchard, and it would be contradictory to these provisions to apply the Watercraft Exclusion to deny coverage. These ambiguities and contradictions must be resolved against Kinsale and in favor of SBS and coverage.

**THE PROCEEDINGS AND ALLEGATIONS**

SBS generally accepts Kinsale's statement of the proceedings and allegations, with the following exceptions and additions. R. Doc. 78, p. 2-5.

#102503671v1

3

Laci Blanchard alleges that, on March 25, 2022, her husband, Ronnie Blanchard, was an employee of SBS and performing work on a 120,000-pound blowout preventer and pipe jack on a caisson in the Gulf of Mexico. *Blanchard v. Sanare Energy Partners LLC,* No. 4:22-cv-2420 (S.D. Tex.) (the "Blanchard Lawsuit"), R. Doc. 54, p. 4, para. 12. The caisson is owned and operated by defendant and third-party plaintiff, Sanare. *Id.*

A caisson is a fixed structure, and the equipment being installed on the platform sometimes is referred to as a hydraulic workover unit ("HWOU"). Sanare Third Party Complaint, R. Doc. 49, p. 13, paras. 12 and 13. Further, Sanare's Third-Party Complaint alleges that SBS specializes in well intervention and completion services, which include the work Mr. Blanchard was performing at the time of the accident. *Id.* para. 13. There is no allegation that SBS owned, chartered, or operated any vessel.

Mrs. Blanchard alleges that Mr. Blanchard was working on and attached to the HWOU as it was being erected on the caisson. Blanchard Lawsuit, R. Doc. 54, p. 4, para. 12. During the course of this operation, the HWOU toppled over, dragging Mr. Blanchard into the ocean where he drowned. *Id.*

Kinsale instituted this action seeking a declaratory judgement that it does not insure Sanare. R. Doc. 39. Sanare answered, counterclaimed, and brought the present Third-Party Complaint against SBS for contractual defense and indemnity. R. Doc. 49, p. 19. (Sanare also alleges SBS failed to obtain required insurance for the benefit of Sanare. This claim is not involved in the current motion regarding the coverage provided by Kinsale. Accordingly, SBS will not address it here other than to say that it is false, including that any request for *Marcel* coverage was untimely.)

#102503671v1

4

In response to Sanare's claim for contractual defense and indemnity, SBS brought the present Crossclaim against Kinsale for insurance coverage of Sanare's Third-Party Complaint. R. Doc. 69, p. 5.  Kinsale's Rule 12 motion is to dismiss SBS' Crossclaim.

The Policy is attached to Kinsale's Complaint.  R. Doc. 1-3.  The Policy is based on a standard Commercial General Liability ("CGL") form, with endorsements to modify the coverage to meet the specific needs of SBS. R. Doc. 1-3, p. 7.  The Policy Coverage Area includes the Gulf of Mexico, where the accident occurred, and the business class is contractors servicing oil and gas wells, which is the work SBS was performing at the time the accident occurred. R. Doc. 1-3, p. 2, 34.  In addition, the Policy states that it was issued in reliance on the information provided by SBS in its application. R. Doc. 1-3, p. 28, Representations.  Attached as Exhibit A is SBS's Application for the Kinsale Policy.  The Description of Primary Operations is on page 2. It makes plain to Kinsale that SBS is seeking coverage for operations on fixed platforms in federal waters and that there is some exposure for third party jack-up boats.  (As discussed below, Exhibit A is admissible in this Rule 12 motion because it is referenced in documents made part of the pleadings.)

The Policy also contemplates maritime claims.  It has an In Rem Endorsement, which provides that, when property of any insured is sued *in rem* under admiralty jurisdiction, the Policy will apply as though the insured had been sued *in personam*. R. Doc. 1-3, p. 33.  Contradictorily, the Policy also has a Maritime Liabilities Exclusion. R. Doc. 1-3, p. 72.  As SBS discusses below, this exclusion in ambiguous and inapplicable to the contractual defense and indemnity claim of Sanare against SBS.

In addition, the Watercraft Exclusion is amended so that it does not apply to watercraft that SBS does not own, and it is agreed that SBS did not own any watercraft involved in this case. In the standard CGL form the Watercraft Exclusion is in exclusion g., which reads in part:

> This exclusion does not apply to:
>
> (2) A watercraft that you own that is:
>
>     (a) Less than 26 feet long; and
>
>     (b) Not being used to carry persons or property for a charge;

R. Doc. 1-3, p. 10. Exclusion g. (2) is amended by the Amendment to Watercraft Exclusion, which provides:

> Section 1 – Coverages, Coverage A, Bodily Injury and Property Damage, 2. Exclusions, item g., paragraph (2) is deleted in its entirety and replaced with the following:
>
>     (2) A watercraft you do not own:
>
> And subparagraphs 2(a) and 2(b) are deleted.

R. Doc. 1-3, p. 37. Reading the standard General Liability form and the Amendment to Watercraft Exclusion together the Policy provides that the Watercraft Exclusion does not apply to watercraft SBS does not own. Here, the watercraft allegedly involved in the accident was the *L/B Swordfish*, and there is no allegation that SBS owned the *Swordfish*. R. Doc. 49, p. 14, para. 17.

Kinsale cites a second amendment to the Watercraft Exclusion. R. Doc. 78, p. 5; R. Doc. 1-3, p. 56. But the two exclusions are not inconsistent, and both can be given effect. Alternatively, the second endorsement is inapplicable and/or ambiguous and contradictory to other provisions of the Policy.

## STANDARDS FOR RULE 12 MOTION
## AND INTERPRETATION OF THE POLICY

In deciding Kinsale's Rule 12 motion to dismiss SBS's crossclaim for coverage, the Court should determine whether the crossclaim contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [cross-claimant] pleads factual content that allows a court to draw the reasonable inference that the [cross-defendant] is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In considering a motion to dismiss, a court views the crossclaim "in the light most favorable to the [cross-claimant], accepting as true all well-plead factual allegations and drawing all reasonable inferences in the [cross-claimant's] favor." *Lovick v. Ritemoney, Ltd.*, 378 F. 3d 433, 437 (5th Cir. 2004).

As Kinsale states, a court considering a Rule 12 motion should consider that facts alleged in the Crossclaim, including documents incorporated or referenced in the pleadings. *Marchman v. Crawford*, 726 F. App'x 978, 984 (5th Cir. 2018); R. Doc. 78, p. 6-7. Accordingly, the Court may consider the terms of the Policy, which is attached to Kinsale's Complaint, and also SBS's application (Exhibit A), which is referenced in the Policy.

Sanare's Third-Party Complaint alleges diversity jurisdiction. R. Doc. 49, p. 19, para. 2. As federal court sitting in diversity applies the conflict rules of the forum state, here Texas. *See, Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F. 3d 214, 230, (5th Cir. 2005). Texas's choice of law for the interpretation of insurance policies is to apply the law of the state with the most significant relationship to the policy. *Tesco Corp. (US) v. Steadfast Ins. Co.*, No. 01-13-00091-CV, 2014 Tex. App. LEXIS 9682, at *6-7 (Tex. App.—Houston [1st Dist.] Aug. 28, 2014, no pet.). Texas favors the law of the state where the insured resides and where the Policy was issued and delivered. *Id.*

#102503671v1

*at \*11-12*.  In this case, the policy is addressed to and was delivered to SBS, a Louisiana limited liability company, in Louisiana.  R. Doc. 1-3, p. 1.  Accordingly, Louisiana is the state with the most significant relationship to the policy, and Louisiana law governs.

Under Louisiana law, an insurance contract must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. Rev. Stat. Ann. § 22:881 (2024).

The insurer has the burden to prove the application of exclusions, such as the Marine Liabilities Exclusion and the Watercraft Exclusion:

> [A]lthough an insurer can limit its liability if, in so doing, this does not result in a conflict with statutory provisions or public policy, the insurer bears the burden of proof if it claims that a loss falls within a policy exclusion. *Choice Found. v. Law Indus., LLC*, 2021-0431, p. 4 (La. App. 4 Cir. 3/2/22), 336 So.3d 501, 505 (quoting *Perniciaro v. McInnis*, 2018-0113, p. 10 (La. App. 4 Cir. 9/7/18), 255 So.3d 1223, 1231). "[A] provision which seeks to narrow the insurer's obligation is strictly construed against the insurer ...." *Reynolds v. Select Props.*, 1993-1480 (La. 04/11/94), 634 So.2d 1180, 1183 (citing *Garcia v. St. Bernard Sch. Bd.*, 576 So.2d 975, 976 (La. 1991); *Breland v. Schilling*, 550 So.2d 609, 610 (La. 1989)).

*Lewis v State Nat' Ins. Co., Inc.*, 2022-0693, p, 24 (La. 4 Cir. 5/19/23), 368 So, 3d 653, 668; *see also, Grilletta v. Lexington Ins. Co.*, 558 F. 3d 359, 364 (5th Cir. 2009).

Moreover, ambiguities in an insurance policy are construed against the insurer, in favor of coverage:

> [t]he ambiguity must be resolved in favor of the insured "by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *See La. Ins. Guar. Ass'n*, 630 So.2d at 764 (quoting *Breland v. Schilling*, 550 So.2d 609, 610-11 (La.1989)). "The court should construe the policy 'to fulfill the reasonable expectations of the parties in light of the customs and

#102503671v1

8

usages of the industry.'" *Id.* (quoting *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269 (5th Cir.1990)).

*Collins v. A.B.C. Marine Towing, L.L.C*., 123 F. Supp. 3d 841, 847 (E.D. La. 2015); *see also*, *Johnson v. Misirci*, 2006-1136 (La. App. 1 Cir. 03/28/07).

The rule of interpretating ambiguities against the insurer applies particularly when the two provisions of the policy contradict each other. *Rapides Station Land Co. LLC v. Markel Am. Ins. Co*., 2024 U.S. Dist. LEXIS 117744, *25-26 (W.D. La. 2024) is an example involving contradictory provisions regarding vacant buildings:

> "[E]xclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured." In re Katrina Canal Breaches Litig., 495 F.3d at 208 (quoting Ledbetter v. Concord Gen. Corp., 665 So. 2d 1166, 1169 (La. 2006)); see also La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract **[*26]** executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."). Here, there are two conflicting provisions. The first is contained within the body of the policy and provides that the vacant building limitation is waived when checked on the schedule of coverages. The second is the schedule of coverages where all sections are completed except for the vacant building limitation, which provides three options instead of just the one referenced in the body of the policy and gives the instruction to "check one." None of the vacant building limitation options contained in the schedule of coverages are selected. This, in and of itself, creates a dispute of material fact regarding whether the parties intended this provision to apply.

### THE COVERAGE ISSUES WITH RESPECT TO SANARE AND SBS ARE NOT IDENTICAL

Kinsale incorrectly states that the arguments for insurance coverage in Sanare's Counterclaim are virtually identical to the arguments for insurance coverage made in SBS's Crossclaim. R. Doc. p. 2, 4.

Sanare's Counterclaim prays for insurance coverage of the alleged direct tort liability of Sanare and All Coast, LLC to Mrs. Blanchard. R. Doc. 49, p. 18-19, paras. 33-36. In contrast,

#102503671v1

SBS's Crossclaim seeks insurance coverage of Sanare' Third-Party Complaint for contractual defense and indemnity pursuant to the MSA. R. Doc. 69, p. 11, paras. 23-24. Sanare's Third-Party Complaint against SBS is covered as an "insured contract." *Id.* p. 7, para. 12. Sanare's claim against Kinsale is for tort coverage, and SBS's claim against Kinsale is for contract coverage. They are different and require different analyses.

## KINSALE'S ARGUMENTS

Relies on the Marine Liabilities Exclusion and Watercraft Exclusion. R. Doc. 78, p. 2. Kinsale reserves its right to argue the Employers' Liability Exclusion if the Marine Liabilities Exclusion and the Watercraft Exclusion are ineffective. R. Doc. 78, p. 3-4. The reservation has no merit. The Employers' Liability Exclusion expressly provides that it does not apply to liability under an "insured contract," which is the basis of SBS's claim for coverage. R. Doc. 1-3, p. 71.

## THE MARINE LIABILITIES EXCLUSION DOES NOT APPLY

Kinsale fails to carry its burden to show that Sanare's Third-Party Complaint against SBS is excluded by the Marine Liabilities Exclusion. The Marine Liabilities Exclusion generally excludes "claims" or "suits" that might be covered under four broad types of marine policies. R. Doc. 1-3, p. 72. It is ambiguous and does not apply to the liability alleged by Sanare against SBS.

First, Kinsale argues incorrectly that the Marine Liabilities Exclusion excludes "bodily injury" that might be covered by the marine policies. R. Doc. P. 7. In fact, the Policy states that it excludes "claims" or "suits" for "bodily injury" that "might" be covered by the four types of policies. R. Doc. 1-3, p. 72. The difference is important. It is insufficient to show that the marine policies might cover some party for some claim for bodily injury. Rather, Kinsale's burden is to show that the marine policies would cover Sanare' claim against SBS specifically for contractual defense and indemnity.

#102503671v1

10

In fact, Kinsale has failed to show that any of the four listed policy types cover contractual liability. Accordingly, SBS's alleged contractual liability would not be covered by any of the four listed policy types and, therefore, is not excluded by the Marine Liabilities Exclusion.

Second, the Marine Liabilities Exclusion is ambiguous because it refences no specific marine insurance forms but, instead, references four general types of policies without defining exactly what they cover and, therefore, what is excluded. R. Doc. 1-3, p. 72. This ambiguity must be resolved against Kinsale and in favor of SBS and coverage.

In an effort to make up for this deficiency, Kinsale cites to a law review article, but the article just further demonstrates the ambiguity of the Marine Liabilities Exclusion. R. Doc, p. 8; Robert T. Lemmon, II, *Allocation of Marine Risks: an Overview of the Marine Insurance Package*, 81 Tul. L. Rev. 1467 (June 2007) (cited as "Lemmon"). As the title states, the article is only an "overview," and Kinsale's citation of the article is insufficient to carry its burden to show that the exclusion applies specifically to Sanare's claim against SBS for contractual defense and indemnity.

The first type of policy named in the Marine Liabilities Exclusion is Protection and Indemnity (P&I). R. Doc. 1-3, p. 72. (Hull polices do not cover liability for bodily injury and are irrelevant here.) As Lemmon states and Kinsale acknowledges, P&I policies insure liabilities as vessel owner. Lemmon, p. 1480; R. Doc. 78, p. 8. Here there is no allegation that SBS was a vessel owner. Therefore, Sanare's claim against SBS for contractual liability would not be covered by a P&I policy and, therefore, is not excluded by the Marine Liabilities Exclusion.

Moreover, Lemmon makes no suggestion that a P&I policy would cover contractual liability, *Lemmon*, p. 1480–1486, and, in fact, states that contractual liability coverage and "insured contracts" are included in CGL coverages similar to Kinsale's policy. Lemmon, p. 1491.

#102503671v1

11

The second and third types of policies listed in the Marine Liabilities Exclusion are Charterer's Legal Liability and Marine Operator's Liability. R. Doc. 1-3, p. 72. Kinsale cites Lemmon to state that these policies are similar to P&I but for insureds who do not own vessels. R. Doc. 78, p. 8; Lemmon, p. 1488. This statement is overbroad and incorrect.

Lemmon makes clear that Charterer's Liability Policies cover liabilities assumed "as charter." *Id.* Here there is no allegation that SBS chartered a vessel. Accordingly, Sanare's claim against SBS for contractual liability would not be insured by a Charterer's Liability Policy and, therefore, is not excluded by the Marine Liabilities Exclusion.

Contrary to Kinsale's assertion, Lemmon makes no statement whatsoever about a Marine Operator's Legal Liability Policy. R. Doc. 78, p. 8. Accordingly, Sanare's claim against SBS for contractual liability would not be insured by a Marine Operator's Legal Liability Policy and, therefore, is not excluded by the Marine Liabilities Exclusion.

The fourth category of policies is "other similar marine insurance coverages on owned, operated, chartered, or brokered watercraft." Since the three prior named categories of policies did not cover Sanare's claim against SBS for contractual liability, "other similar" policies would not cover SBS's alleged contractual liability. Further, there is no allegation that SBS owned, operated, chartered, or brokered a watercraft. Accordingly, Sanare's claim against SBS for alleged contractual liability would not be covered by the fourth category of marine policies in the Marine Liabilities Exclusion and, therefore, is not excluded by the Marine Liabilities Exclusion.

The cases cited by Kinsale are distinguishable. In *Farrell Lines, Inc. v Ins. Co. of N. Am.*, 789 F.2d 300 (5th Cir. 1986), Farrell Lines was the owner of the vessel and insured under both a General Liability policy and a P&I policy. When a longshoreman was injured, the General Liability insurer cited its exclusion for P&I risks and denied coverage. *Id.* p. 302. The P&I insurer

#102503671v1

12

then defended Farrell. *Id.* The court held that Farrell Lines' liability was, at least in part, as owner of the vessel, and, in fact, the P&I insurer covered the claim. *Id.* p. 304-305. In contrast, SBS was not the owner of the vessel and is not, and could not be, covered by P&I insurance. Accordingly, the application of the watercraft exclusion to the longshoreman's direct claim against Farrell is distinguishable from Sanare's claim for contractual liability against SBS.

Similarly, Kinsale's other citations are distinguishable because they involved vessel owners and direct claims for marine liabilities that were covered by P&I policies. *In re Athena Const., L.L.C.,* 2008 U.S. Dist. LEXIS 58808 (W.D. La. 2008), *8, 17 (direct claims against Athena as the owner of a barge involved in a collision and covered by separate P&I and MEL policies); *In re Antill Pipeline Const. Co., Inc.* 2013 U.S. Dist. LEXIS 1465 (E.D. La. 2013), *8-9, 10-11 (Tarpon Rental, Inc. sued for direct liability in respect of a vessel involved in an allision; any liability necessarily was a marine liability).

## THE WATERCRAFT EXCLUSION DOES NOT APPLY

Kinsale devotes a large part of its Motion to arguing that the Watercraft Exclusion in the Policy precludes coverage to SBS because the underlying accident arose out of the use of a watercraft. R. Doc. 78, p. 12-15. Kinsale asserts that the Watercraft Exclusion in the Policy excludes coverage for bodily injury "arising out of the . . . use . . . of any watercraft." R. Doc. 1-3, p. 8, 56. For multiple reasons, Kinsale fails to carry its burden of proof to show that Sanare's Third-Party Complaint against SBS is excluded by the Watercraft Exclusion.

First, Kinsale failed to reference the Amendment of Watercraft Exclusion, discussed above, which provides an exception for watercraft not owned by SBS. R. Doc. 1-3, p. 8, 37. Because the lift boat that was utilized on the project was not owned (or chartered) by SBS, the Watercraft Exclusion does not apply, thereby rendering the Watercraft Exclusion inapplicable to Sanare's claim against SBS for contractual defense and indemnity.

#102503671v1

Paragraph g. of the standard CGL form provides the Watercraft Exclusion, and sub-paragraphs (1)-(5) provide the exceptions to the Watercraft Exclusion. R. Doc. 1-3, p. 10. A second endorsement to the Watercraft Exclusion alters the language in g. with respect to the general application of the Watercraft Exclusion but makes no modifications with respect to the sub-paragraphs that identify the exceptions to the Watercraft Exclusion. R. Doc. 1-3, p. 56.

In the Amendment of Watercraft Exclusion, there is a modification of the exception to the Watercraft Exclusion contained in sub-paragraph g. (2). It provides that the Watercraft Exclusion does not apply to watercraft not owned by SBS. R. Doc. 1-3, p. 37.

As noted above, the rules of interpretation require the Court to read the Policy as a whole and give effect to all of its provisions. In this regard, SBS submits that the two endorsements related to the Watercraft Exclusion are not inconsistent. One of them pertains to the general description of the Watercraft Exclusion, whereas the Amendment to Watercraft Exclusion relates specifically to an exception to the Watercraft Exclusion. If the exceptions to the Watercraft Exclusion contained within the sub-paragraphs were not intended to remain in place, there would be no reason to include the Amendment of Watercraft Exclusion (R. Doc. 1-3, p. 37) with the Policy. When read together, these two endorsements simply modify the general provision in g. related to the Watercraft Exclusion and also specifically modify one of the sub-paragraphs that contains the exceptions to the Watercraft Exclusion. There would be no reason to modify the exceptions to the Watercraft Exclusion if they were not intended to remain in the Policy.

Second, even pretermitting whether the Watercraft Exclusion applies to vessels that SBS does not own, the Watercraft Exclusion would still not apply to Sanare's claim because the underlying accident did not arise out of the use of a watercraft. Kinsale cites cases in support of its position that the underlying accident arose out of the use of a watercraft, but the cases cited

involve accidents that occurred on vessels or while transiting to or from vessels. *Holden v U.S. United Ocean Servs. L.L.C.*, 582 Fed. Appx. 271, 272 (5th Cir. 2014) (plaintiff was injured while preparing to remove a gangway from a dock to a barge); *Johnson v. Seacor Marine Corp.*, 404 F. 3d 871, 874 (5th Cir. 2005) (plaintiffs were injured while transferring from Seacor's vessels to offshore platforms).

In the instant case, the accident involved the collapse of a platform and is not related to the use of a vessel. *See,* Sanare Third-Party Complaint, R. Doc. 49, p. 13, paras. 12 and 13.

References by Kinsale to allegations in Sanare's Third-Party Complaint that the work that was the subject of the contract between SBS and Sanare contemplated the use of a vessel are not relevant for determining whether the underlying accident actually arose out of the operation of the vessel. Those allegations may be relevant to choice of law issues (maritime versus state law). In fact, in describing the Sanare/SBS MSA Sanare's Third-Party Complaint cites legal authority on what is a maritime contract. R. Doc. 49, p. 22, paras. 12, 13. But these allegations do not establish that the accident arose out of the use of a vessel, which Kinsale would not be able to do without submitting evidence that is not appropriate for a motion to dismiss. All Kinsale has been able to establish is that the underlying work that was the subject of the contract between SBS and Sanare contemplated that a lift boat would be utilized for certain parts of that work, but it has not established that the underlying accident arose out of the use of that lift boat.

Based on the clear language in the Policy and the endorsements thereto, as well as the fact that the underlying accident did not arise out of the operation of a vessel, there are both factual and legal bases for this Court to rule that the Watercraft Exclusion does not provide grounds for Kinsale to deny coverage to SBS.

Third, in the alternative that the Court finds that the Watercraft Exclusion might apply, SBS submits that the Policy is ambiguous and its terms are contradictory to other parts of the Policy. As discussed above, any such ambiguity or contradiction must be construed against Kinsale and in favor of coverage afforded to SBS.

SBS contends that the two endorsements to the Watercraft Exclusion are consistent and provide an exception for vessels SBS does not own. But, in the event that the Court disagrees with this interpretation, the two endorsements would be contradictory to each other. The Amendment of the Watercraft Exclusion provides coverage because SBS did not own the vessel. Kinsale contends that the second endorsement eliminates this exception. As discussed above, this contradiction, "in and of itself," would create a dispute of material fact regarding whether the parties intended the exclusion to apply. This dispute is an ambiguity that must be resolved in favor of SBS and coverage.

In addition, there are other provision of the Policy that are contradictory to the application of the Watercraft Exclusion. As noted, SBS's application (Exhibit A) and the Policy both state that SBS is in the business of providing oil well services on platforms in the Gulf of Mexico. SBS reasonably expected that these operations would be covered. In addition, it is contradictory for Kinsale to say that the Policy covers these risks and, at the same time, argue that Sanare' claim, which arose during the course of covered operations, somehow is excluded by the Watercraft Exclusion. Similarly, as discussed above, the Policy contains an In Rem Endorsement. The In Rem Endorsement contemplates claims against vessels, and it is contradictory for Kinsale to argue that the Watercraft Exclusion excludes these claims. These contradictions also must be resolved in favor of SBS and coverage.

**ORAL ARGUMENT**

Pursuant to Local Rule 7.5A, SBS suggests that, considering the complexity of the facts and law, oral argument would be helpful to the Court. Accordingly, SBS requests the Court to set Kinsale's Rule 12 motion for oral argument.

**CONCLUSION**

Kinsale has the burden of showing that the Marine Liabilities Exclusion and the Watercraft Exclusion apply to the claim of Sanare against SBS for contractual defense and indemnity, and it has failed to carry its burden.

The Marine Liabilities Exclusion does not apply to Sanare's claim against SBS because it is limited to vessel owners, charterers, and operators, and SBS was none of these. Further, the Marine Liabilities Exclusion is inherently ambiguous because it excludes claims that might be insured by broad types of policies. Without reference to specific policy forms it is unclear what claims are and are not excluded. This ambiguity must be resolved against Kinsale and in favor of SBS and coverage.

The Watercraft Exclusion does not apply because the Amendment to Watercraft Exclusion provides an exception to the exclusion for watercraft SBS does not own, and SBS owned no watercraft involved in this accident. Further, Kinsale failed to show that Sanare's claim arose out to the use of a watercraft. Alternatively, the Watercraft Exclusion is ambiguous and contradictory, and these ambiguities and contradictions must be resolved against Kinsale and in favor of SBS and coverage.

For all of these reasons, Kinsale's Rule 12 motion should be denied.

Respectfully submitted,

**JONES WALKER LLP**

*/s/ R. Scott Jenkins*
R. SCOTT JENKINS, *attorney-in-charge*
LA Bar No. 23144
SDTX No. 3610494
sjenkins@joneswalker.com
EDWARD F. LEBRETON
TX Bar No. 00789066
SDTX No. 23016
elebreton@joneswalker.com
Jones Walker LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
Telephone:     (504) 582-8000
Facsimile:       (504) 582-8583

AND

HANNAH A. MAYFIELD
TX Bar No. 24115036
SDTX No. 3608924
hmayfield@joneswalker.com
Jones Walker LLP
811 Main Street, Suite 2900
Houston, Texas 77002
Telephone:     (713) 437-1800
Facsimile:       (713) 437-1810

*Counsel for Defendant*
*SBS Energy Services, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of August 2024, the above and foregoing pleading has been electronically filed through the Court's CM/ECF system, which will send notification of electronic filing to all counsel of record.

*/s/ R. Scott Jenkins*
R. SCOTT JENKINS

#102503671v1